# In the United States Court of Federal Claims

**No. 25-1037C**
**Filed: September 13, 2026**
**Redacted Version Issued for Publication: October 3, 2026**[1]

* * * * * * * * * * * * * * * * * * *

**PATRIOT FIRST PROFESSIONAL SERVICES, INC.,**

**Protestor,**

**v.**

**UNITED STATES,**

**Defendant.**

* * * * * * * * * * * * * * * * * * *

**J. Taylor Benson**, Benson Law Office, PLLC, Colorado Springs, CO, for protestor.

**Reta E. Bezak**, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for defendant. With her were **Steve J. Gillingham**, Assistant Director, Commercial Litigation Branch, **Patricia M. McCarthy**, Director, Commercial Litigation Branch, and **Brett A. Shumate**, Assistant Attorney General, Civil Division. Of counsel **Natica Neely**, Trial Attorney, Acting Deputy Chief Counsel for Litigation, United States Department of Veterans Affairs, Washington, DC.

## O P I N I O N

**<u>HORN, J.</u>**

This Opinion follows after numerous protests, corrective actions, amendments, and ultimately a cancellation of a procurement, all of which relate to the same Solicitation No. 36-C-24222-R-0035 (the Solicitation), as issued and amended, and now cancelled by the United States Department of Veterans Affairs (VA). Protestor, Patriot First Professional Services, Inc. (Patriot First), filed the current bid protest, Case No. 25-1037C after the VA executed a memorandum on March 24, 2025, with the subject: "Cancellation Of 36C24222R0035 [sic] and Re-solicitation for Homeless Veterans Services in New Jersey." (alteration added) (March 24, 2025 Cancellation memorandum).[2]

---

[1] This Opinion was issued under seal on September 13, 2026. The parties were asked to propose redactions prior to public release of the Opinion. This Opinion is issued with the some of the redactions that the parties proposed in response to the court's request. Words which are redacted are reflected with the notation: "[redacted]."

[2] The court notes that the date at the beginning of the Cancellation memorandum is listed as "March 21, 2025," but it was not until three days later, on March 24, 2025, that the

Previously, protestor had filed a pre-award bid protest, Case No. 23-147C, which was assigned to the undersigned, and which was remanded to the VA after the court found the lack of explanation and documentation for a corrective action taken by the VA was arbitrary and capricious. Subsequently, after the remand and further documentation from the VA, protestor filed another bid protest, Case No. 24-1365C, also assigned to the undersigned, and the undersigned found that the VA, again, had not offered a sufficient explanation or documentation for continuing with the Solicitation as issued after the remand. The court issued an injunction prohibiting the agency from proceeding with an award based on the Solicitation. Thereafter, the agency issued the March 24, 2025 Cancellation memorandum and cancelled the Solicitation, which is the basis for protestor's current bid protest, Case No. 25-1037C. The court notes that after the cancellation, the VA subsequently issued a new solicitation for the same services for homeless veterans, No. 36-C-24226-Q-0118 (the New Solicitation), which the protestor has challenged in a different, pre-award bid protest, Case No. 26-768C, which also was assigned to the undersigned, and which is currently pending, but not the subject of this Opinion.

In the current bid protest, Case No. 25-1037C, after the parties briefed cross-motions for judgment on the Administrative Record, and after the parties also briefed protestor's motion to supplement the Administrative Record, the court held oral argument.

## FINDINGS OF FACT

As indicated, the now cancelled Solicitation at issue has a long history and is the subject of multiple protests, which the court summarizes below. As explained by the agency in the VA's June 3, 2022 Acquisition Plan for Solicitation No. 36-C-24222-R-0035, the "VA has been providing direct and specialized services to homeless Veterans for nearly 25 years," and explained that as "part of the plan to end homelessness among Veterans, the VA has utilized Contracted Emergency Residential Services (CERS) programs since 2009." The June 3, 2022 Acquisition Plan described the CERS program as follows:

> CERS programs target and prioritize homeless Veterans transitioning from literal street homelessness, Veterans being discharged from institutions (including those in need of medical respite), and Veterans who have recently become homeless. CERS programs, either directly or through linkage with community and other VA services, provide low demand, time-limited services such as supporting mental health stabilization, substance use disorder (SUD) treatment services, enhancement of independent living

---

Cancellation memorandum itself was signed by the Administrative Contracting Officer Danelle Wassink and approved by Jadwiga Kustra, the Supervisory Contracting Officer and Source Selection Authority for the Solicitation Therefore, the court refers to the date the Cancellation memorandum was effective, March 24, 2025 when referring to the Cancellation memorandum in this Opinion.

> skills, vocational training, and employment services. Emphasis is placed on referral and placement into permanent housing or longer-term residential programs utilizing VA and/or community resources. Lengths of stay in CERS typically range from 90 to 180 days with the option to extend based on clinical need. Since the need for homeless housing and case management services remains ongoing, the resultant contracts will be awarded competitively for one base year with (4) one year options.

The June 3, 2022 Acquisition Plan explained that the VA sought to replace expiring contracts in the CERS program for its Hudson Valley Health Care System, New Jersey Health Care System, and New York Harbor Health Care System.[3]

On July 8, 2022, consistent with the June 3, 2022 Acquisition Plan, the VA issued Solicitation No. 36-C-24222-R-0035, the Solicitation at issue before this court in the pre-award bid protest, Case No. 24-1365C, for its CERS program. The Solicitation provided for fixed price indefinite delivery, indefinite quantity contracts, with resulting contracts awarded for one base year with four one-year options. The Solicitation provided the following:

> **GUARANTEED MINIMUM**: The Government will order at least $250,000.00 in services during the base year of the contract. (Note: The guaranteed minimum order amount applies to the base year only. Award of the additional option years is not guaranteed nor is there a guaranteed minimum order amount in any given option year that is exercised.)
>
> **MAXIMUM TOTAL CONTRACT AMOUNT**: The potential aggregate contract total over the term of the entire contract (base year and four option years) is $4,000,000.00.
>
> **ORDERING PROCEDURES**: VA has the sole authority to refer Veterans for care at the contractor's facility. A task order in the amount of the estimated quantity will be issued for each performance period. At the end of the performance period, if all estimated quantities have not been provided by the vendor, a bilateral modification will be issued to decrease the remaining funds and quantities.
>
> **AWARD BASED ON INITIAL OFFERS**: Offerors are advised of the possibility that award may be made without discussion. Accordingly, offerors are cautioned to submit their initial offers based on their most favorable terms, pricing and technical factors.

(capitalization and emphasis in original).

---

[3] Protestor was the incumbent CERS contractor for the New Jersey Health Care System and has continued to perform services under a bridge contract.

The Solicitation's "Performance Work Statement" provided the technical requirements that each offeror was expected to meet. One such technical requirement was the "Place of Performance," which required:

> **3. PLACE OF PERFORMANCE**: Services shall be provided at the contractor's facility. Contracts will only be awarded to contractors with active residential treatment facilities. Facilities must be in centralized locations, near public transportation, and near areas that provide employment. One contract will be awarded per location/VAMC [Veterans Affairs Medical Center] catchment area as follows:
>
> > **3.1.** Hudson Valley VA Health Care System: within 35 miles of Peekskill, NY
> > **3.2.** VA NY Harbor Health Care System: Manhattan, Brooklyn, and Queens (not Staten Island)
> > **3.3.** VA New Jersey Health Care System: Northern or Central New Jersey

(capitalization and emphasis in original; alteration added). An additional technical requirement titled: "Contractor Responsibilities" required:

> **7. CONTRACTOR RESPONSIBILITIES**
>
> . . .
>
> > **7.2. FACILITY**: It is the responsibility of the contractor to properly maintain its facilities. The VA shall have no responsibility for paying or reimbursing the contractor for such expenses.
> > **7.2.1.** The contractor's facility must [provide]:
>
> . . .
>
> > **7.2.1.13.** Minimum space requirements for each location:
> > **7.2.1.13.1.** VA Hudson Valley Health Care System
> > **7.2.1.13.1.1.** 10 beds (must be able to accommodate both male and female)
> > **7.2.1.13.2.** VA New Jersey Health Care System
> > **7.2.1.13.2.1.** 30 beds (male and female separated by floor)
> > **7.2.1.13.3.** VA New York Harbor Health Care System
> > **7.2.1.13.3.1.** 56 beds comprised as follows:
> > **7.2.1.13.3.1.1.** 8 women Veterans
> > **7.2.1.13.3.1.2.** 48 male Veterans
>
> . . .

**7.3. SPECIAL POPULATION CONSIDERATIONS:** The contractor shall not discriminate based on race, color, ethnicity, religion, sex, age, national origin, disability, sexual orientation, gender identity/expression, political affiliation, or status as a parent.

. . .

**7.3.12.** Reasonable accommodations may include:

. . .

**7.3.12.7.** Segregated sleeping where one wing is set aside.

(capitalization and emphasis in original; alteration and omissions added).

The Solicitation's "Evaluation Methodology" provided:

The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered. The following factors shall be used to evaluate offers:

Technical Capability (Factor 1)
Past Performance (Factor 2)
SDVOSB [Service-Disabled Veteran-Owned Small Business] /VOSB [Veteran-Owned Small Business] Status (Factor 3)
Price (Factor 4)

All non-price factors (Factors 1 – 3), when combined, are significantly more important than price (Factor 4).

Factors are listed in descending order of importance. Each subfactor is of equal importance.

(capitalization in original; alterations added). Additionally, the Solicitation's "Evaluation Methodology" described the requirements for each evaluation factor. Factor 1, Technical Capability, stated:

**Subfactor A: Facility**

1. Inspection: In accordance with VHA [Veterans Health Administration] Directive 1162.04, initial inspections of all health care for homeless Veterans contract residential services (HCHV CRS) program sites must be conducted before the site is approved by the HCHV National Program

Office. All items on the HCHV inspection packet (attachment D.3) will be evaluated.
2. Provide a detailed description of the facility(ies); include its location in the community and proximity to public transportation and VA Medical Centers.
3. Provide a floor plan (and photos if available), reflecting the layout of the facility (including room dimensions); at minimum, identify the following areas:
a. Entrances and Exits
b. Kitchen
c. Dining Area
d. Common Areas
e. Laundry
f. Bedrooms (indicate if they are for men or women)
g. Bathrooms (indicate if they are for men or women)
h. Isolation/Quarantine Room
i. Location of computers for Veteran use
j. Location of security and/or cameras, etc.
k. Office space for VA liaison
l. Office space for Veterans to meet in private with his/her case manager
4. Explain how you will provide safety and privacy for all Veterans (male, female, transgender, etc.).

**Subfactor B: Experience:**

Describe your specific experience with working with individuals who are Veterans, homeless, have a history of mental health conditions, substance abuse and/or medical issues.
General statements claiming experience working with the homeless that does not include specific references to prior contract work/experience, or that does not include the information required below, are not acceptable. For each contract/experience, the narrative must clearly contain all of the following information:
• the legal name of entity with whom the offeror held the contract;
• the contract number;
• a description of the program the offeror performed under that contract;
• the dates during which the offeror performed the contract/work;
• the size of the service/program (at minimum, estimated annual number of individuals/bed days of care per year and estimated annual total value);
• the name, phone number, and email address of a person at the entity with whom the offeror held the contract who can verify the information the offeror provides in the narrative description for this factor

**Subfactor C: Key Personnel/Staffing**

> 1. Explain how you will staff the facility/program 24/7.
> 2. Provide a detailed explanation of your contingency plan for staff vacancies and/or extended staff absences (that exceed one week).
> 3. Provide a list of the Key Personnel (utilizing attachment D.19[[4]]) who will be working under the contract. List their position/title, hours, professional background (i.e. résumé), etc. If these are new positions for your organization, provide a detailed explanation of how your will recruit and hire qualified candidates to begin work within 60 calendar days of contract award.

**Subfactor D: Therapeutic and Rehabilitative Services**

> 1. Provide a list/proposed schedule of the group activities and/or therapeutic programs that will be offered to Veterans. Provide a brief description of each program/activity.
> 2. Explain how you will engage Veterans and encourage their participation in these programs/services.

(emphasis and capitalization in original; footnote and alteration added). Factor 2, Past Performance, stated:

> The VA shall conduct a performance risk assessment based upon the past performance of the offeror as it relates to the probability of successful accomplishment of the work required by the solicitation. The VA may use information available in its own files, from electronic databases such as the Past Performance Retrieval System (PPIRS), or from any other source it deems appropriate. The Government will consider the offeror's record for delivery, quality, and proposed major subcontractors or teaming partners as it relates to the probability of successfully performing the solicitation requirements. While the Government may elect to consider data obtained from other sources, the burden of providing current, accurate and complete past performance information rests with the offeror.
>
> Offeror shall provide a list of references pertaining to contracts of similar size and scope by providing the information outlined in Attachment D.20 of the solicitation. No more than five total relevant contracts (within the past five years) shall be submitted. The VA may contact references and parties other than those identified by the offeror, and information received may be

[4] Attachment D.19 is a chart which requested offerors to supply information about key personnel, comprised of "Name," "Position," "Hours/Shifts (for this contract)," and "Description of Qualifications and Professional Background." (capitalization in original).

used in the evaluation of the offeror's past performance. Offerors should not provide general information on their performance on the identified contracts. General performance information will be obtained from the references.

If there are no contracts or services agreements fitting the criteria outlined above, the offeror shall provide a statement indicating as such.

Past performance information will be reviewed to determine how well the offeror performed work relevant to the type of effort and magnitude described in the performance work statement, and how recent the described experience is.

Recent = Performance is occurring presently or has occurred within the last three years.

Relevant = Present/past performance effort involved essentially the same, or much of the same, magnitude of effort and complexities this solicitation requires.

NOTE: A proposal containing no relevant past performance shall have past performance evaluated as "neutral," in accordance with FAR [Federal Acquisition Regulations] Part 15.305(a)(2). A "neutral" rated proposal may not represent the most advantageous proposal to the Government and thus, may be an unsuccessful proposal when compared to the proposal of other offerors.

(capitalization and emphasis in original; alteration added). Factor 3, Service-Disabled Veteran-Owned Small Business/Veteran-Owned Small Business, stated:

(1) For SDVOSBs/VOSBs: In order to receive credit under this Factor, an Offeror shall submit a statement of compliance that it qualifies as a SDVOSB or VOSB in accordance with VAAR 852.215-70 (Service-Disabled Veteran-Owned and Veteran-Owned Small Business Evaluation Factors). Offerors are cautioned that they must be registered and verified in Vendor Information Pages (VIP) database (http://www.VetBiz.gov).

(2) For Non SDVOSB/VOSB Offerors Proposing to Subcontract to SDVOSBs/VOSBs: To receive some consideration under this Factor, an Offeror must state in its proposal the names of SDVOSB(s) and/or VOSB(s) with whom it intends to subcontract and provide a brief description and the approximate dollar values of the proposed subcontracts. Additionally, proposed SDVOSB/VOSB subcontractors must be registered and verified in Vendor Information Pages (VIP) database (http://www.VetBiz.gov) in order to receive some consideration under the Veterans Involvement Factor.

> (3) With regard to the requirements for registration and verification in the VetBiz database, reference VAAR [Veterans Affairs Acquisition Regulation] 804.1103-70 (Vendor Information Pages (VIP) Database).
> Offeror shall select one item below and provide the required information listed above: (All replies that are not completed will be scored as if N/A were selected):
>
> ____ SDVOSB (registered and verified in VIP)
> ____ VOSB (registered and verified in VIP)
> ____ Non-Veteran proposing to subcontract with SDVOSB or VOSB (registered and verified in VIP)
> ____ N/A

(capitalization in original; alteration added). The last factor, Factor 4, Cost/Price, stated:

> Price will not be scored but evaluated or traded against the non-cost factors in order to determine the overall best value to the Government. The Contracting Officer will check all price proposals to ensure that the price schedule was properly completed/formatted in accordance with RFP instructions (see Addendum to FAR 52.212-1). For evaluation purposes, this will be calculated by multiplying the estimated quantity by the proposed unit price for LINs [line-item numbers]. The estimated total for each performance period will then be computed, and then the estimated total for the base and all option periods will be computed and used when determining best value.
>
> Award will be made to the offeror that represents the best value to the Government. Price will be evaluated for reasonableness by comparing the proposed price with the Independent Government Cost Estimate (IGCE) and the prices received in response to the solicitation, as well as any other method it deems appropriate. The Government may award to a higher priced offeror whose technical proposal and past performance demonstrates a better capability and higher confidence in its ability to successfully perform the contract requirements.

(alterations added).

Veteran's Haven North and protestor Patriot First timely submitted proposals for the New Jersey Health Care System contract on August 2, 2022 and August 5, 2022, respectively. On October 27, 2022, Administrative Contracting Officer Heather Schrader,[5] sent letters titled: "Request for Final Proposal Revisions (FPR) for 36C24222R0035 [sic]" to both Veteran's Haven North and Patriot First, stating that "[t]he Government has

[5] The court notes that Heather Schraeder is sometimes listed as the "Administrative Contracting Officer" and, at other times, is listed as the "Contract Specialist" in the agency's documents.

completed its initial proposal evaluations and determined that discussions will be held to identify the proposal offering the best value to the Government. You are hereby notified that you are within the competitive range and are given the opportunity to submit a final proposal revision (FPR).” (alterations added).

The October 27, 2022 letter sent to Veteran’s Haven North documented the deficiencies that the VA identified in Veteran’s Haven North’s initial proposal:

**Factor 1: Technical Capability - Subfactor A: Facility**

- [redacted]

**Factor 1: Technical Capability – Subfactor C: Key Personnel/Staffing**

- [redacted]

(emphasis and capitalization in original). The October 27, 2022 letter did not identify any other deficiencies in Veteran’s Haven North’s initial proposal, such as location, nearby transportation, or nearby job opportunities.

The October 27, 2022 letter sent to Patriot First documented a single deficiency that the VA identified in protestor’s initial proposal:

**Factor 1: Technical Capability - Subfactor A: Facility**

- [redacted]

(emphasis and capitalization in original).

According to the Source Selection Evaluation Board’s October 27, 2022 Memorandum, the VA determined that, despite their deficiencies, both proposals fell within the competitive range and decided to conduct discussions with both offerors:

> Upon conclusion of the initial technical evaluations, the Government has determined the need to enter into discussions with the offerors (Patriot First Professional Services, Inc. and Veteran’s Haven North, New Jersey Department of Military and Veterans Affairs). In accordance with FAR 15, if discussions are to be conducted, a competitive range must be established. Based on the ratings of each proposal against all evaluation criteria, the administrative contracting officer has determined that both offerors comprise the most highly rated proposals.

Both offerors submitted their final proposal revisions on November 3, 2022. According to the November 18, 2022 “Source Selection Evaluation Board Consensus Memo,” the Source Selection Evaluation Board evaluated the two final proposals, as follows:

**III. Summary Rating of Final Proposal Revisions (FPR):** Based on FPR [Final Proposal Revision] evaluations, the SSEB [Source Selection Evaluation Board] FPR consensus ratings for Factor 1 are shown below:

FACTOR 1 – TECHNICAL CAPABILITY

| **Subfactor** | **Patriot First** | **Veteran's Haven North** |
|---|---|---|
| Subfactor A: Facility | Satisfactory | Satisfactory |
| Subfactor B: Experience | Satisfactory | Satisfactory |
| Subfactor C: Key Personnel/Staffing | Satisfactory | Satisfactory |
| Subfactor D: Therapeutic & Rehabilitative Services | Satisfactory | Satisfactory |
| Overall Rating for Factor 1 | Satisfactory | Satisfactory |
| Rank | 2 | 1 |

Patriot First resolved the deficiency for Subfactor A: Facility by [redacted]. Their rating for Subfactor A: Facility increased from "unsatisfactory" to "satisfactory." As a result of FPR, the overall rating for Patriot First for Factor 1 – Technical Capability increased from "unsatisfactory" to "satisfactory."

Veteran's Haven North resolved the deficiency for Subfactor A: Facility by [redacted]. As a result, their rating for Subfactor A: Facility increased from "unsatisfactory" to "satisfactory." The deficiency for Subfactor C: Key Personnel/Staffing was also resolved. [redacted]. As a result, their rating for Subfactor C: Key Personnel/Staffing increased from "unsatisfactory" to "satisfactory." Both of Veteran's Haven North's deficiencies were resolved in FPR. Therefore, the overall rating for Veteran's Haven North for Factor 1 – Technical Capability increased from "unsatisfactory" to "satisfactory."

(alteration added; capitalization and emphasis in original).

Based on the offerors' final proposals, with their revisions included, the Source Selection Evaluation Board, in the November 18, 2022 "Source Selection Evaluation Board Consensus Memo," issued the following recommendation:

**V. Source Selection Recommendation:** Both offeror's [sic] were rated exactly the same with an overall rating of "satisfactory" for Factor 1 – Technical Capability and "satisfactory" for all of the four subfactors. Neither offer had any strengths, weaknesses or deficiencies after FPR.

Since both offers were rated exactly the same, the SSEB compared the two offers in an effort to establish a ranking for Factor 1 – Technical Capability. Veteran's Haven North is a State run [sic], not-for-profit organization,

> specifically established by the State of New Jersey for homeless Veterans whereas Patriot First is a for-profit small business, owned by a Service Disabled Veteran. The program Superintendent at Veteran's Haven North is a Veteran and many of the staff who work there are also Veterans. [redacted]
>
> Based on the evaluation of Factor 1 described above, the SSEB unanimously recommends that Veteran's Haven North, New Jersey Department of Military and Veterans Affairs be selected for award under the subject solicitation for the New Jersey VA Health Care System.

(capitalization and emphasis in original; alteration added).

On November 23, 2022, the VA issued its Source Selection Decision Document, signed by Contracting Officer Allan Preston and Contract Specialist Heather Schraeder awarding the New Jersey Health Care System contract to Veteran's Haven North.

On December 9, 2022, protestor filed a post-award bid protest at the GAO challenging the VA's evaluation of proposals and award to Veteran's Haven North under Solicitation No. 36-C-24222-R-0035. On January 9, 2023, the VA sent a document to the GAO titled: "Notice of Corrective Action and Request for Summary Dismissal." (capitalization in original). The "Notice of Corrective Action and Request for Summary Dismissal" stated, in relevant part:

> The Department of Veterans Affairs (VA or Agency) respectfully requests that the Government Accountability Office (GAO) summarily dismiss the above-referenced post-award protest of Patriot First Professional Services, Inc., (Protester) filed with respect to Solicitation No. 36C24222R0035 [sic] (Solicitation) and the subsequent contract award to Veteran's Haven North (Awardee) for emergency residential housing and case management services for homeless Veterans supported by the New Jersey VA Medical Center (VAMC). Dismissal of this protest in its entirety is warranted because the Agency is taking corrective action.
>
> Protester alleges that the Agency's evaluation, award decision, and debriefing letter were flawed. Protester's requested relief is award of the contract to Protester or rejection of all offers and issuance of a new solicitation.
>
> After further review, the Agency has determined that corrective action is required. VA will amend the Solicitation to address alleged ambiguities noted in the [GAO] protest, to include separation of beds by gender and clarification of the facility location requirements under Technical Factor 1, Subfactor A; allow offerors to submit revised technical and price proposals; evaluate revised proposals in accordance with the terms of the Solicitation; and, if indicated, make a new award decision.

(capitalization in original; alterations added). On January 17, 2023, the GAO dismissed the protest, concluding that "we find that the agency's proposed corrective action renders the protest academic."

On January 27, 2023, Administrative Contracting Officer Heather Schraeder sent notices to protestor and Veteran's Haven North via email, stating:

> As you know, GAO has dismissed Protest B-421321.1 for VA corrective action. Therefore, VA is amending Request for Proposal (RFP) 36C24222R0035 [sic] with Amendment 0006 (attached). As a result, you may revise your technical and price proposals.
>
> RFP 36C24222R0035 [sic] Amendment 0006 replaces the performance work statement (PWS). References to the VA Hudson Valley Health Care System and VA New York Harbor Health Care System have been removed. In addition, 3. Place of Performance and 7.2.1.13. Minimum Space Requirements were also revised.
>
> RFP 36C24222R0035 [sic] Amendment 0006 also revises E.8 Evaluation – Commercial Products and Services, Factor 1 – Technical Capability. Factor 1 – Technical Capability, Subfactor A: Facility, item #2 was revised to reflect the geographic area of New Jersey. Factor 1 – Technical Capability, Subfactor D: Therapeutic and Rehabilitative Services item #1 was revised to align with 7.1.5.8. of the PWS.
>
> RFP 36C24222R0035 [sic] Amendment 0006, boxes 15A, B and C, should be completed by the same official who was authorized to sign the SF 1449 and previous amendments. <u>Offerors must sign Amendment 0006 and complete the Price Schedule of Services (B.2) contained in the amendment (even if you opt to keep your pricing the same as previously proposed).</u>
>
> Revised technical and price proposals for RFP 36C24222R0035 [sic] Amendment 0006, should be sent electronically via email to Heather.Schrader@va.gov by **9 AM on Friday, February 3, 2023**. Any responses received after the stated due date and time will not be considered in the Government's evaluation process and you will instead be evaluated and considered based on your previous submission only. If you chose not to submit a revision, please submit a response that your original proposal stands as previously submitted. Please note that RFP 36C24222R0035 [sic] Amendment 0006 still needs to be completed and returned as explained in the paragraph above. Only information submitted in writing will be evaluated and considered in making a source selection decision. The Government intends to make an award decision without obtaining further revisions.

(capitalization and emphasis in original; alterations added). Administrative Contracting Officer Heather Schraeder attached Amendment 0006 to the January 27, 2023 notice to offerors. A section of the new Amendment 0006 was titled: "DESCRIPTION OF AMENDMENT/MODIFICATION," and stated:

> This amendment to the above referenced solicitation applies to the offers already submitted for the VA New Jersey Health Care System only. Section B.2 Schedule of Services is replaced with the attached (beginning on page 2), B.3 Performance Work Statement is replaced with the attached (beginning on page 5) and E.8 52.212-2 Evaluation – Commercial Products and Commercial Services, Factor 1 – Technical Capability (beginning on page 60). All other terms and conditions remain in full force and effect.

(capitalization in original). Amendment 0006 changed the Solicitation's Performance Work Statement at paragraph 3 to state:

> **PLACE OF PERFORMANCE**: Services shall be provided at the contractor's facility located in one of the following New Jersey Counties: Bergen, Elizabeth, Essex, Hudson, Hunterdon, Mercer, Middlesex, Monmouth, Morris, Ocean, Passaic, Somerset, Sussex, Warren. The facility must already have an active residential treatment program.
>
> **3.1.** If for any unforeseen circumstances, services are to be moved to alternate locations, the contractor shall contact the Contracting Officer Representative (COR) immediately. Based on the length of time for services being provided at the alternate location, it will be up to the discretion of the Contracting Officer (CO) to determine if a contract modification will be required, which could include a decision to terminate the contract.

(capitalization and emphasis in original). Amendment 0006 also changed the Solicitation's Performance Work Statement at paragraph 7, "**CONTRACTOR RESPONSIBILITIES**," at section 7.2.1.13 to state: "Minimum space requirements: 30 beds separated by gender to ensure safety and privacy (must be able to accommodate both male and female Veterans)," and at section 7.3.12.7 to state: "Segregated sleeping where one portion of the facility is set aside to ensure safety and privacy." (capitalization and emphasis in original).

Initial Bid Protest at the United States Court of Federal Claims (Case No. 23-147C)

As described above, on February 3, 2023, Patriot First filed a pre-award bid protest in this court, Case No. 23-147C, which was assigned to the undersigned. In Case No. 23-147C, protestor challenged the VA's evaluation of proposals and the agency's corrective action amending the Performance Work Statement to include Amendment 0006 as arbitrary and capricious, listing three counts. In count one of protestor's complaint in Case No. 23-147C, protestor alleged that "the agency's valuation and ranking of bidders' proposals was arbitrary, capricious, an abuse of discretion, and not in accordance with

law." In count two, protestor alleged that "the agency's decision to award the contract to VHN [Veteran's Haven North] was arbitrary, capricious, an abuse of discretion, and not in accordance with law." (alteration added). In count three, protestor alleged that "the agency's corrective action, issuance of Amendment 0006 to the solicitation and its contents, are arbitrary, capricious, an abuse of discretion, and not in accordance with law." In its motion for judgment on the Administrative Record in the first protest, Case No. 23-147C, protestor created, and included, a side-by-side demonstrative chart of the original Performance Work Statement, issued on July 8, 2022, and the amended Performance Work Statement, issued on January 27, 2023, which included Amendment 0006, as follows:

| **Original Solicitation** | **Amendment 0006** |
|---|---|
| PLACE OF PERFORMANCE: Services shall be provided at the contractor's facility. Contracts will only be awarded to contractors with active residential treatment facilities. Facilities must be in centralized locations, near public transportation, and near areas that provide employment. One contract will be awarded per location/VAMC catchment area as follows: | PLACE OF PERFORMANCE: Services shall be provided at the contractor's facility located in one of the following New Jersey Counties: Bergen, Elizabeth, Essex, Hudson, Hunterdon, Mercer, Middlesex, Monmouth, Morris, Ocean, Passaic, Somerset, Sussex, Warren. The facility must already have an active residential treatment program. |
| **7.2.1.13.** Minimum space requirements for each location:<br>[…]<br>**7.2.1.13.2.** VA New Jersey Health Care System<br>**7.2.1.13.2.1.** 30 beds (male and female separated by floor) | 7.2.1.13. Minimum space requirements: 30 beds separated by gender to ensure safety and privacy (must be able to accommodate both male and female Veterans). |
| 7.3.12.7. Segregated sleeping where one wing is set aside. | 7.3.12.7. Segregated sleeping where one portion of the facility is set aside to ensure safety and privacy. |

(capitalization, emphasis, and omission in original).

In the earlier pre-award bid protest, Case No. 23-147C, the parties briefed defendant's partial motion to dismiss protestor's complaint for lack of subject matter jurisdiction and the parties' cross-motions for judgment on the Administrative Record. After briefing was complete and after the court held oral argument in the earlier Case No. 23-147C, the court issued a remand Order on May 7, 2024, determining that the lack of explanation and documentation for the corrective action, adding Amendment 0006 to the Solicitation, was arbitrary and capricious. The May 7, 2024 remand Order stated, in part:

> After extensive review of the parties' submissions, including the submissions in response to the court's questions at oral argument, the court determines that the United States Department of Veterans Affairs (VA) did not offer a compelling explanation or justification for the decision to take corrective action and issue Amendment 0006 to the Solicitation No. 36-C-24222-R-0035. The Administrative Record contains no documents which provide the court with a contemporaneous justification or rationale by the agency for taking the corrective action and changing the requirements of the Solicitation. Specifically, the agency provided no basis why Performance Work Statement, section B.3.3 (Place of Performance) was changed removing the requirement that "Facilities must be in centralized locations, near public transportation, and near areas that provide employment." Additionally, the agency did not provide an explanation why Performance Work Statement, section B.3.7 (Facility), requirement 7.2.1.13 was changed removing the requirement to "separate male and female by floor." Finally, there was no explanation for why the agency revised the Performance Work Statement section 7.3.12.7 from "Segregated sleeping where one wing is set aside" to "Segregated sleeping where one portion of the facility is set aside to ensure safety and privacy."

(capitalization in original). The May 7, 2024 remand Order also determined that the agency did not explain what ambiguities existed in the Solicitation, nor did the VA explain why the requirements listed in the Solicitation should be changed as found in Amendment 0006 to meet the agency's procurement and that the agency's explanation was not clear in the corrective action notice sent to the offerors. The May 7, 2024 remand Order concluded:

> The lack of explanation or justification is arbitrary and capricious. The VA shall reconsider the needs of the agency and shall, if necessary, revise the Solicitation, and provide a detailed basis and contemporaneous explanation for the changes to the Solicitation. After review of the requirements of the agency and, if the agency issues a new amendment to the Solicitation, the agency should consider allowing the offerors to submit new proposals and evaluate the new proposals in accordance with the terms of the amended Solicitation.
>
> The court notes that based on the information provided by protestor during the pendency of the protest, the agency may have relied on misleading or incomplete information in determining that Veteran's Haven North's proposal was superior to protestor. In any subsequent evaluation, the agency shall take care to not rely on incomplete or misleading statements about any offerors, including the protestor.

The court remanded the procurement to the agency, providing the agency with several potential options for how to proceed, such as reconsidering its needs, permitting new or revised proposals, and revising the Solicitation.

After the court's remand, the agency issued an August 5, 2024 Memorandum for Record titled: "Basis for A00006 and changes made pursuant to A00007 and response to concerns raised by Patriot First Professional Services, Inc." Also after the court's remand to the agency, the VA notified Veteran's Haven North and Patriot First that "[t]he Court of Federal Claims has made a decision on No. 23-147C and has remanded this case back to the VA for corrective action. Therefore, the VA is amending Request for Proposal (RFP) 36C24222R0035 [sic] with Amendment 0007" to add Americans with Disabilities Act (ADA) requirement to the Solicitation's Performance Work Statement. (alterations added).

The background section for the August 5, 2024 Memorandum for Record stated:

> **Background:** Based on the Court's decision, VA has considered the best path forward for this procurement and determined that it will continue to include Amendment A0006 and issue another Amendment, A0007, as discussed in further detail below. This decision was made after review of the Court's order, to include consideration of the additional concerns raised by Patriot First Professional Services, Inc. (Patriot), and a meeting with the using service.

(emphasis in original). In a section titled: "Basis for A00006 Changes," the August 5, 2024 Memorandum for Record described the earlier, pre-remand changes in Amendment 0006, as follows:

- This amendment changed language in the Performance Work Statement (PWS), section B.3.3 (Place of Performance), to remove the requirement that "Facilities must be in centralized locations, near public transportation, and near areas that provide employment." This change was made and remains in place because the initial PWS had been drafted to consider contractor facilities in three different locations – VA Hudson Valley Health Care System, 2094 Albany Post Road, Montrose, NY 10548, VA New Jersey Health Care System, 385 Tremont Avenue, East Orange, NJ 07018 and VA New York Harbor Health Care System, 423 E. 23rd Street, New York, NY 10010. Award has been made to contractors for VA Hudson Valley Health Care System, 2094 Albany Post Road, Montrose, NY 10548 and VA New York Harbor Health Care System, 423 E. 23rd Street, New York, NY 10010, and the amendment addresses the remaining location that is the subject of this protest, VA New Jersey Health Care System, 385 Tremont Avenue, East Orange, NJ 07018. Since we are only soliciting for the VA New Jersey location, the requirement of "Centralized locations" is no longer needed as we are no longer talking about three facilities. Accordingly, section B.3.3 was amended to list the 14 counties in New Jersey that the VA New Jersey Healthcare System, located at 385 Tremont Avenue,

services, which are Bergen, Elizabeth, Essex, Hudson, Hunterdon, Mercer, Middlesex, Monmouth, Morris, Ocean, Passaic, Somerset, Sussex, and Warren. To avoid any confusion, the place of performance shall only address the New Jersey location going forward from A00006. The PWS has removed all instances of the additional locations as well.

- Next A00006 changed PWS section B.3.7 (Facility), requirement 7.2.1.13.2.1, which implements bedspace requirements for each location. The New Jersey location, originally stated a bedspace requirement of "30 beds (male and female separated by floor)." The amendment removed the requirement of "male and female separated by floor" and instead stated a less restrictive bedspace requirement of "30 beds separated by gender to ensure safety and privacy." Requirement 7.2.1.13.2.1 within the original solicitation was more restrictive than necessary, which could potentially impede competition. Separation of genders is required for the safety of all Veterans as well as privacy; a need that can be met in multiple ways without the need to physically separate Veterans by gender and by floor. Therefore, this language was changed to accurately reflect the Agency's needs for ensuring Veteran patients are safe and have private accommodations.

- A00006 also changed section B.3.7, requirement 7.3.12, which states that reasonable accommodations may include: "Segregated sleeping where one wing is set aside" (requirement 7.3.12.7). The amendment changed this language to "Segregated sleeping where one portion of the facility is set aside to ensure safety and privacy." Requirement 7.3.12.7 in the original solicitation was more restrictive than necessary, which could potentially impede competition. Separation by gender is required for the safety of all Veterans, as well as privacy; a need that can be met in multiple ways without the need to physically separate genders by setting aside one wing. Therefore, this language was changed to accurately reflect the Agency's needs for ensuring Veteran patients are safe and have private accommodations.

As noted above, in the August 5, 2024 Memorandum for Record, the agency also stated that it issued Amendment 0007 after the court's remand, which added an Americans with Disabilities Act (ADA) requirement to the Solicitation's Performance Work Statement. In a section titled: "Basis for A00007 Changes," the August 5, 2024 Memorandum for Record states: "The Americans with Disabilities Act (ADA) guidelines were previously missing from the original PWS and Solicitation. [sic] ADA requirement has been added to section **7.2 FACILITY** under 7.2.1.1." (capitalization and emphasis in original; alteration added).[6] Amendment 0007 amended the Solicitation's Performance Work Statement to require:

---

[6] Amendment 0007 also modified the gender bedspace requirement, changing the numbering of the paragraph from 7.2.1.13.2.1 to 7.2.1.14 and adding requirements for a

**7.2.1.** The contractor's facility must:

> **7.2.1.1** Meet the Americans with Disabilities Act (ADA) guidelines for accessible accommodations for Veterans with physical limitations or impairments. At least 5% of a facility's HCHV CER beds must meet ADA accessibility requirements for both male and female veterans, collectively, to include entrances/exits, bathroom facilities, and common areas. Veterans must not be segregated from the rest of the facility due to physical disability. Veterans must have the same access to treatment services, support, common areas, etc. as any other resident. This requirement is based on HUD [United States Department of Housing and Urban Development] accessibility requirements which requires that all federally assisted new construction housing developments with 5 or more units must design and construct 5% of the dwelling units, or at least one, whichever is greater, to be accessible for persons with mobile disabilities. Accessibility Requirements for Buildings | HUD.gov / U.S. Department of Housing and Urban Development (HUD).

(alteration added; capitalization and emphasis in original).[7] The description of Amendment 0007 provided:

> This amendment to the above referenced solicitation applies to the offers already submitted for the VA New Jersey Health Care System Only[[8]]. Section B.2 Schedule of Services is replaced with the attached, B.3 Performance Work Statement is replaced with the attached (beginning on page 2), B.3 Performance Work Statement is replaced with the attached (beginning on page 4).

---

minimum of four beds for female veterans. The modified gender bedspace requirements stated:

> **7.2.1.14.** Minimum space requirements: 30 beds separated by gender to ensure safety and privacy (must be able to accommodate both male and female Veterans). The Contractor shall provide 4 of the 30 beds for female Veterans.

(capitalization and emphasis in original).

[7] The agency's citation to the United States Department of Housing and Urban Development's website did not contain an issuance date.

[8] As described above, originally, defendant also had solicited offers for the Hudson Valley Health Care System and New York Harbor Health Care System.

> All offerors will be allowed to submit revised technical and price proposals but are not required to do so. Should an offeror not submit a revised proposal, the VA will evaluate the most recent proposal provided by the offeror.
>
> All other terms and conditions remain in full force and effect.

(footnote added).

The August 5, 2024 Memorandum for Record after the remand also included a section titled: "**Other Pertinent Issues raised by Patriot First Professional Service, Inc.**" (capitalization and emphasis in original). The August 5, 2024 Memorandum for Record explained that the agency replaced the Source Selection Evaluation Board and Contracting Officer and stated:

> Although VA does not agree there was any evidence of bias, the VA will appoint a new Source Selection Evaluation Board and has appointed a new CO [Contracting Officer] to address this concern raised by Patriot. Those individuals will be responsible for the evaluation of revised proposals and the CO/SSA [Contracting Officer/Source Selection Authority] will either confirm the existing award decision or issue a new award decision.

(alteration added).

<u>Second Bid Protest at the United States Court of Federal Claims (Case No. 24-1365C)</u>

After the agency issued the August 5, 2024 Memorandum for Record and made the affirmative decision to retain Amendment 0006, as well as decided to add Amendment 0007 to Solicitation No. 36-C-24222-R-0035, on September 3, 2024, protestor filed a second, pre-award bid protest in this court, Case No. 24-1365C, challenging the VA's decisions to issue Amendment 0006 and Amendment 0007, as well as the agency's decision to retain Amendment 0006 unchanged after the remand. On February 27, 2025, due to the urgency for the procurement decision to the agency, as represented by the defendant to the court, the court issued an oral decision to the parties. On May 1, 2025, the court issued a written Opinion memorializing the oral decision provided earlier to the parties. Regarding Amendment 0007, the court's May 1, 2025 Opinion explained:

> Following the court's May 7, 2024 remand Order, the agency added Amendment 0007 to the Solicitation, which stated the following as requirements:
>
> > Meet the Americans with Disabilities Act (ADA) guidelines for accessible accommodations for Veterans with physical limitations or impairments. Per U.S. Department of Housing and Urban Development, at least 5% of a facility's HCHV CER beds must meet ADA accessibility requirements for both male

> and female veterans, to include entrances/exits, bathroom facilities, and common areas. Veterans must not be segregated from the rest of the facility due to physical disability; though the bedrooms for men and women need to be separated to ensure adequate privacy and safety. Veterans must have the same access to treatment services, support, common areas, etc. as any other resident. This requirement is based on HUD [Department of Housing and Urban Development] accessibility requirements which requires that all federally assisted new construction housing developments with 5 or more units must design and construct 5% of the dwelling units, or at least one, whichever is greater, to be accessible for persons with mobile disabilities. Accessibility Requirements for Buildings | HUD.gov / U.S. Department of Housing and Urban Development (HUD)[.]

(emphasis in original; alterations added). Amendment 0007 amended the Solicitation to include the above requirements in paragraph 7.2.1.1 in the Performance Work Statement. In the August 5, 2024 Memorandum for Record, the agency offered the following explanation for adding Amendment 0007 to the Solicitation: "Americans with Disabilities Act (ADA) guidelines were previously missing from the original PWS and Solicitation."

The May 1, 2025 Opinion noted that

the references to the Americans with Disabilities Act guidelines in Amendment 0007 are not straightforward and are somewhat confusing because Amendment 0007 cites guidelines issued "per U.S. Department of Housing and Urban Development" and states that Amendment 0007 "is based on HUD [United States Department of Housing and Urban Development] accessibility requirements which requires that all federally assisted new construction housing developments with 5 or more units must design and construct 5% of the dwelling units, or at least one, whichever is greater, to be accessible for persons with mobile disabilities." (alteration added). See Accessibility Requirements for Buildings | HUD.gov / U.S. Department of Housing and Urban Development (HUD). These HUD guidelines provide, in part, that,

> [a]ll Federally assisted new construction housing developments with 5 or more units must design and construct 5 percent of the dwelling units, or at least one unit, whichever is greater, to be accessible for persons with mobility disabilities. These units must be constructed in accordance with the Uniform Federal Accessibility Standards (UFAS) or a standard that is equivalent or stricter. An additional 2 percent of the dwelling units, or at least one unit, whichever is greater,

> > must be accessible for persons with hearing or visual disabilities. For more information on the accessibility requirements for Federally assisted new construction and substantial alterations of existing Federally assisted housing, see Section 504: Disability Rights in HUD Programs.
>
> U.S. Dep't of Housing and Urb. Dev., ACCESSIBILITY REQUIREMENTS FOR BUILDINGS,https://www.hud.gov/program_offices/fair_housing_equal_opp/disabilities/accessibilityR (last visited May 1, 2025) (emphasis in original; alteration added). The HUD website, in turn, cites the "Uniform Federal Accessibility Standards (UFAS)" which is the title of a United States Access Board webpage. Id. (emphasis in original). According to the United States Court of Appeals for the Ninth Circuit, the United States Access Board is "to establish 'minimum guidelines and requirements for the standards issued' under Title III of the ADA, 29 U.S.C. § 792(b)(3)(B), and to 'develop advisory information for, and provide appropriate technical assistance to, individuals or entities with rights or duties under regulations prescribed' under Title III, 29 U.S.C. § 792(b)(2)" of the Americans with Disabilities Act. Miller v. Cal. Speedway Corp., 536 F.3d 1020, 1024–25 (9th Cir. 2008) (alteration added).
>
> Executive Branch agencies, such as the VA, must comply with applicable statutes, such as the Americans with Disabilities Act. The VA, however, has the discretion to require offerors to meet a standard for veterans, including physically disabled veterans, above the legal minimum in a solicitation. Despite this discretion, a number of the references cited by the agency in Amendment 0007 are confusing, lack explanation, and are not clarified in the August 5, 2024 Memorandum for Record.

The court, in the May 1, 2025 Opinion examined the agency's June 3, 2022 Acquisition Plan and August 5, 2024 Memorandum for Record and determined:

> The agency's June 3, 2022 Acquisition Plan and August 5, 2024 Memorandum for Record both reflect that the agency was soliciting proposals for housing for physically disabled veterans as part of the VA's defined unique veterans' needs included in the contract to be awarded, and it was logical for the agency to add a requirement for compliance with the Americans with Disabilities Act to this VA solicitation. For example, the agency's June 3, 2022 Acquisition Plan stated, in part:
>
> > The VA has been providing direct and specialized services to homeless Veterans for nearly 25 years. As part of the plan to end homelessness among Veterans, the VA has utilized Contracted Emergency Residential Services (CERS) programs since 2009. CERS programs target and prioritize homeless Veterans transitioning from literal street

> homelessness, Veterans being discharged from institutions (including those in need of medical respite), and Veterans who have recently become homeless. CERS programs, either directly or through linkage with community and other VA services, provide low demand, time-limited services such as supporting mental health stabilization, substance use disorder (SUD) treatment services, enhancement of independent living skills, vocational training, and employment services. Emphasis is placed on referral and placement into permanent housing or longer-term residential programs utilizing VA and/or community resources.
>
> Given the agency's explanation in Amendment 0007 and the, albeit brief, explanation in the contemporaneous August 5, 2024 Memorandum for Record, that the "Americans with Disabilities Act (ADA) guidelines were previously missing from the original PWS and Solicitation" and that the services would be for the benefit of veterans, including physically disabled veterans, the addition to the Solicitation that offerors had to comply with the Americans with Disabilities Act requirements was appropriate and in the best interests of the veterans that the VA would be serving during the contract performance.

Therefore, regarding Amendment 0007, the court determined "Amendment 0007 reflects the agency's need to include the requirements of the Americans with Disabilities Act statute and any applicable regulations implementing the statute as part of the procurement," and "protestor's arguments challenging the inclusion of Amendment 0007 are unsuccessful because the addition after the remand of Amendment 0007 was supported by a sufficient, albeit brief and somewhat confusing, contemporaneous explanation."

Regarding Amendment 0006 in the Solicitation after the court's remand and the agency's corrective action, the court, in the May 1, 2025 Opinion, compared Section B.3 Place of Performance in the Performance Work Statement in the original Solicitation, which was issued on July 8, 2022, to Section B.3 Place of Performance in the Performance Work Statement after Amendment 0006 was issued on January 27, 2023. The court also examined Amendment 0006's changes to the Performance Work Statement at paragraph 7, "**CONTRACTOR RESPONSIBILITIES**," at section 7.2.1.13 which stated: "Minimum space requirements: 30 beds separated by gender to ensure safety and privacy (must be able to accommodate both male and female Veterans)," and at section 7.3.12.7 which stated: "Segregated sleeping where one portion of the facility is set aside to ensure safety and privacy." (capitalization and emphasis in original).

Regarding the Place of Performance or central location requirements, the court's May 1, 2025 Opinion concluded:

> The agency, in part, described that the rationale for the decision to change the central location requirements in the Solicitation through Amendment 0006 was because the agency was "only soliciting for the VA New Jersey location" after award already had been made to the two New York locations. The agency explained: "Since we are only soliciting for the VA New Jersey location, the requirement of 'Centralized locations' is no longer needed as we are no longer talking about three facilities" given the only remaining location to be awarded was in New Jersey. The agency used the phrase that the "change was made," in the past tense to explain the change. This limited explanation to change and retain the New Jersey only requirement of Amendment 0006 regarding the central location requirements as changed appears reasonable. The agency, however, did not offer any documentation or explanation for why the VA removed the requirements that facilities must be "near public transportation, and near areas that provide employment." There is no explanation in the August 5, 2024 Memorandum for Record why facilities must be "near public transportation, and near areas that provide employment" did not continue to be important requirements to the agency's mission after Amendment 0006 was issued, or after the remand, given that some of the veterans served by the contract would likely be disabled veterans who might require access to public transportation and who might require the ability to more easily seek employment near the awardee's facility.

Regarding the segregated sleeping requirements and the gender bedspace requirements, the court's May 1, 2025 Opinion determined:

> The August 5, 2024 Memorandum for Record used the phrase that the "change was made," in the past tense to explain the change to the gender bedspace requirements and the phrase "[t]he amendment changed" to explain the change the segregated sleeping requirements. (alteration added). The August 5, 2024 Memorandum for Record also used the exact same general, unexplained phrase, "the original solicitation was more restrictive than necessary, which could potentially impede competition," in both the gender bedspace requirements and the segregated sleeping requirements as a justification to issue Amendment 0006 or to retain Amendment 0006. The agency did not offer an explanation for how or why the changes in Amendment 0006 to the gender bedspace requirements could be met in "multiple ways without the need to physically separate Veterans by gender and by floor." The agency also did not explain how or why the earlier gender bedspace requirements were "more restrictive than necessary" or offer an explanation of how the agency planned to accomplish its safety needs "without the need to physically separate Veterans by gender and by floor." The agency's justification for the segregated sleeping requirements in the Solicitation through Amendment 0006, that was to be "required for the safety of all Veterans as well as privacy," was very general and was not explained by the agency, nor was the comment that the earlier

> requirements were "more restrictive than necessary" explained in the August 5, 2024 Memorandum for Record. After the remand, the agency still has not sufficiently documented or explained the agency's decision to include or retain the gender bedspace requirements or the segregated sleeping requirements in Amendment 0006 prior to the remand, and also has not offered an explanation for retaining the specific gender bedspace and segregated sleeping requirements after the remand. Additionally, the August 5, 2024 Memorandum for Record's general comments also did not provide an explanation or justification for the agency's belief that the earlier requirements "could potentially impede competition," especially given that there were only two offerors, and only those two offerors were given an opportunity to update their proposals. Finally, the August 5, 2024 Memorandum for Record failed to demonstrate how the Amendment 0006 accomplished any of the agency's safety goals.

Therefore, the court concluded, regarding Amendment 0006:

> In sum, the agency did not sufficiently explain or document the original decision to include Amendment 0006 in the Solicitation, nor has the agency sufficiently documented or substantiated a new decision after the remand to retain the unchanged Amendment 0006. The agency's justification for adding Amendment 0006 was insufficient, as discussed in this court's earlier remand Order, and the agency's August 5, 2024 Memorandum for Record does not offer anything more than generalized, conclusory, unsupported concerns that the original Solicitation "could potentially impede competition" or was "more restrictive than necessary," which were only vague assertions. The language in the August 5, 2024 Memorandum for Record suggests to the court that the agency is wedded to its pre-remand posture and has made little to no effort to explain the original decision to add Amendment 0006 to the Solicitation or to explain or document the decision to retain Amendment 0006, unchanged after the remand. The August 5, 2024 Memorandum for Record fails to validate or explain its decision to amend the identified provisions in the Solicitation to the benefit of necessary veterans services. Taken together, the agency's failure to explain or justify the inclusion of Amendment 0006, or explain or justify why the agency retained the unchanged Amendment 0006 after the remand demonstrates that the agency lacked a rational basis for the decision to include Amendment 0006 in the Solicitation or to retain Amendment 0006 unchanged. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332; see also Mitchco Int'l, Inc. v. United States, 26 F.4th at 1377; Harmonia Holdings Grp., LLC v. United States, 999 F.3d at 1403. The arbitrary and capricious decision to continue to rely on Amendment 0006 unchanged in the evaluation process for the Solicitation demonstrates an error by the VA in the procurement process. Moreover, protestor was prejudiced by the agency's decision to continue to include the requirements of the unchanged Amendment 0006 and protestor has

> suffered a "'non-trivial competitive injury which can be redressed by judicial relief.'" See Orion Tech., Inc. v. United States, 704 F.3d at 1348 (quoting Weeks Marine, Inc. v. United States, 575 F.3d at 1362–63); see also SEKRI, Inc. v. United States, 34 F.4th at 1071.

The court granted protestor's motion for judgment on the Administrative Record and denied defendant's cross-motion for judgment on the Administrative Record. Additionally, the court, after reviewing the injunctive standards, granted an injunction in favor of protestor prohibiting the agency from proceeding with an award based on the Solicitation which includes Amendment 0006.

At the same time the court was considering the protestor's challenges to Amendment 0006 and Amendment 0007 in the pre-award protest in Case No. 24-1365C, the agency continued to evaluate Patriot First's and Veteran's Haven North's proposals in response to the revised Solicitation, which included both Amendment 0006 and Amendment 0007. As summarized in the March 24, 2025 Cancellation memorandum:

> The newly appointed SSEB conducted initial group consensus evaluations for Factor 1: Technical Capability on December 20, 2024, and January 8, 2025. On January 17, 2025, both offerors were issued a competitive range determination letter that provided a list of their proposal deficiencies, weaknesses, and uncertainties. On February 4, 2025, a Request for Final Proposal Revisions (FPR) was sent to both vendors. A common cut-off date and time was established for Tuesday, February 11, 2025, by 16:30 ET. Due to an omitted attachment, this deadline was subsequently extended to Thursday, February 13, 2025, at 16:30 ET. Timely FPR responses were received from both offerors. The FPR were provided to the SSEB to re-evaluate Factor 1 and the SSA conducted the price evaluation. Factors 2 and 3 were not re-evaluated as the offerors did not revise these factors. The final technical evaluation took place on February 20, 2025. The ACO [Administrative Contracting Officer] and CO [Contracting Officer] evaluated past performance, price and SDVOSB [Service-Disabled Veteran-Owned Small Business] status. An award decision was made based on technical capability, past performance, SDVOSB status and price. The decision was not announced to the vendors due to ongoing litigation. Veteran's Haven North was to be the prospective successful offeror.

(alterations added). Notably, in protestor's complaint in the above captioned cancellation bid protest, protestor alleges:

> On January 17, 2025, the Agency issued to Patriot a Notice of Competitive Range Determination letter, providing notice that Patriot's proposal "is within the competitive range of the most highly rated proposals submitted for this acquisition." The Agency also notified Patriot that it had completed its evaluation of both bidders' proposals, but that award of the resultant contract cannot be made without entering into discussions.

(internal reference omitted).

Cancellation of the Solicitation

Following the court's oral decision on February 27, 2025, the VA reviewed the court's decision and issued the March 24, 2025 Cancellation memorandum regarding the cancellation of the Solicitation, which as referenced above, was signed by Ms. Wassink, the Administrative Contracting Officer, and approved by Ms. Kustra, the Supervisory Contracting Officer and Source Selection Authority. The VA's March 24, 2025 Cancellation memorandum begin:

> After careful review of the current solicitation history and the recent determination regarding which amendments VA can consider during proposal evaluations, it has become necessary to cancel the existing solicitation and re-solicit the requirement under a new solicitation.
>
> The Court of Federal Claims (COFC) determined that Amendment 0006 cannot be used in the evaluation of the proposals. Without Amendment 0006, one of the two responding offerors is no longer eligible to receive an award. Additionally, COFC did not exclude Amendment 0007. Consequently, the only remaining offeror is not eligible for award under the solicitation's terms and conditions. As a result, neither offeror may remain eligible for award under the current solicitation. Approximately three years have passed since the issuance of Solicitation 36C24222R0035 [sic], and none of the original program office stakeholders or contracting staff are involved in the current procurement process. The loss of institutional knowledge with the transition of staff increases the risk that new evaluation and procurement staff may not fully understand the nuances of the requirement, leading to misinterpretations of offeror proposals. Without the original requestors' insights, the SSEB [Source Selection Evaluation Board] may select a proposal that technically meets the solicitation requirements but does not fully address the operational needs, leading to performance issues post-award. Also, many Federal Acquisition Regulation (FAR) revisions have been published, impacting the terms and conditions of the solicitation. A few examples of impactful FAR changes that transpired over the past two months are the revocation of FAR 52.222-26 Equal Opportunity, FAR 52.222-36 Equal Opportunity for Workers with Disabilities, and elimination of the Prohibition of Segregated Facilities Clause at FAR 52.222-21, all of which were in the solicitation. Furthermore, the fact that seven amendments were issued indicates that the Program Office has not fully refined the Performance Work Statement (PWS) and contract terms and conditions. Given the extent of the revisions and the amount of time that has passed since the solicitation was issued, it would be beneficial for the Program Office to reassess its requirements and develop a more structured and comprehensive solicitation. This will ensure

> clarity for all potential offerors, support a fair and effective competition, and ensure continued and quality services for Veterans.

(alteration added). Regarding the "history" of the procurement, the March 24, 2025 Cancellation memorandum stated:

> The procurement process has been complex, with multiple transitions in key acquisition personnel and ongoing protests affecting its timeline. Initially, the solicitation was issued on July 8, 2022, and publicly posted on SAM.gov by Heather Schrader, Contract Specialist (CS) and Allan Preston, Contracting Officer (CO). The VA acquisition personnel changed to Shawn Lawrence, CS and Jadwiga Kustra, CO in March of 2024. In November of 2024, the VA acquisition personnel again changed to Danelle Wassink, Administrative Contracting Officer (ACO) and Jadwiga Kustra, Source Selection Authority (SSA). As a result of a protest challenging the integrity of the initial evaluation process, the Government implemented corrective action by replacing the original Source Selection Evaluation Board (SSEB) with a newly appointed board composed of members who were not directly involved in the procurement. The change was made to eliminate alleged, through unproven, potential favoritism or bias, ensuring that the evaluation was conducted with complete impartiality. The new SSEB, selected based on similar expertise and independence from prior procurement actions, conducted a fresh assessment of proposals in accordance with the established evaluation criteria. Due to the change in the SSEB, members were provided the PWS and source selection information two weeks prior to the initial evaluation so that they could familiarize themselves with the requirement.
>
> Although the corrective action of replacing the SSEB was meant to eliminate potential favoritism, it removed the people with the most in-depth understanding of the requirement's intent, scope, and critical needs. Generally, the originators' involvement helps ensure that proposals are evaluated with a clear understanding of the technical and functional aspects of the procurement. Replacement of the SSEB caused delays and inefficiencies; the new evaluators required additional time to familiarize themselves with the requirement, delaying the procurement process.

After summarizing the amendments to the Solicitation, the initial litigation at the United States Court of Federal Claims, and the VA's evaluation of the proposals with Amendment 0006 and Amendment 0007 included, the March 24, 2025 Cancellation memorandum stated:

> On February 27, 2025, the Court issued a permanent injunction on Amendment 0006, prohibiting its use in the evaluation. However, the new solicitation evaluation had already been completed using Amendment 0006. Without Amendment 0006, one of the two responding offerors, Veteran's

> Haven North, is no longer eligible to receive an award. Veteran's Haven North does not have a multi-level building, required by the Amendment. COFC did not exclude the use of Amendment 0007, which results in the determination that the only remaining vendor, Patriot First, is ineligible for award under the solicitation's terms and conditions. Patriot First does not fully meet the Americans with Disabilities Act (ADA) guidelines throughout its facility and disabled Veterans could only be accommodated [redacted]. While the first floor of the building could accommodate some Veterans, and currently fulfills vendor placement needs under the bridge contract, VA could not limit future referrals to the program based on ADA compliant space availability. Important areas, such as [redacted]. This would be burdensome and create barriers to achieving Veteran care. The Veteran population is aging and accommodations for wheelchairs and other adaptive equipment or physical limitations is necessary to ensure proper care. There is [redacted] at the facility. As a result of the exclusion of Amendment 0006 and upholding Amendment 0007, neither vendor would meet the requirements under the current solicitation.

The March 24, 2025 Cancellation memorandum determined:

> VA cannot make an award to either of the two offerors that submitted proposals. In addition, the PWS requires updates to better define the Government's requirements, expectations and performance standards. If the PWS is unclear, incomplete, or flawed, it can lead to significant risks that may negatively impact contract execution, oversight, and mission success. Furthermore, it is not in the best interest of the Government to further amend or retract issued Amendments from 36C24222R0035 [sic] so that either vendor remains eligible for award. Neither vendor is eligible for award if Amendment 0006 is stricken, and Amendment 0007 stands due to the recent COFC decisions.
>
> Based on these factors, the undersigned hereby recommends the cancellation of the current solicitation and the development of a new, well-defined solicitation that accurately reflects the needs of the Program Office. Moreover, it is recommended that the originators of the updated requirement shall be used to evaluate technical capability.

(alteration added). More than two months after the March 24, 2025 Cancellation memorandum, on May 27, 2025, the VA issued Amendment 0008 cancelling the Solicitation. Amendment 0008 provided:

> Amendment 0008: The purpose of this Amendment is to formally cancel the VA New Jersey Healthcare System requirement under Solicitation 36C24222R0035 [sic]. The cancellation is being issued at the request of the requiring activity to allow for further refinement of the Performance Work Statement (PWS) and associated contract terms and conditions. The

> Government anticipates reissuing the solicitation once the requirement has been revised to accurately reflect the current need.
>
> As a result of this cancellation:
> -No contract will be awarded under this solicitation for the VA New Jersey Healthcare System (VA NJHCS).
> -All proposals received to fulfill the VA NJHCS need will be retained and destroyed in accordance with agency policy.
> -Offerors are not required to acknowledge this amendment.

(alteration added).

Third Bid Protest at the United States Court of Federal Claims (Case No. 25-1037C)

In response to the agency's cancellation of the Solicitation, on June 20, 2025, protestor filed the above captioned bid protest, Case No. 25-1037C. Protestor alleged that the VA "improperly cancelled the Solicitation without providing a regulatory or statutory basis for the decision, continuing its pattern of arbitrary decisions to avoid a contract award to qualified bidder Patriot, and of conforming the Solicitation's RFP and technical requirements to the capabilities of the only other bidder, Veterans Haven North." After recounting the long history of the Solicitation, the bid protest complaint in Case No. 25-1037C alleges that "[r]ather than amending the Solicitation for a third time to remove Amendment 0006, accept amended proposals (or evaluate original proposals), and make a decision to award the contract to Patriot as the only responsive and responsible bidder, the Agency elected to cancel the Solicitation." (alteration added). Patriot First contends that "[t]he Agency's motive for cancelling the Solicitation is to avoid awarding the New Jersey contract to Patriot, or alternatively, to conform a new solicitation to allow its preferred bidder, VHN, to compete and win the award." (alteration added). Protestor also argues:

> The Agency's cancellation action lacks reasonable justification and violates procurement law, because no authority allows an agency to cancel and reissue a Solicitation based on an unknown and unjustified need or change in the Agency's requirements, "once the requirement has been revised to adequately reflect the current need." The Agency has not defined that need. The Agency has not adequately documented its cancellation decision. The CO's cancellation notice demonstrates that the Agency lacks support for its conclusions, including no identified change or amendment to the Solicitation that would materially change the Solicitation's requirements and justify a cancellation decision. Compounding this error, the Agency simultaneously seeks to procure the same services under an alternative, but substantively similar RFP without adequate justification for doing so, where the changes/amendment to the alleged future Solicitation are currently unknown and undefined.

(internal references omitted). Protestor's bid protest complaint in the currently under review cancellation bid protest contains three counts, in Count I, protestor argues that "the Agency Decision to cancel the Solicitation based on undefined Agency needs and anticipated but undefined changes to the PWS and contract terms and conditions lacks a rational basis and violates procurement law." In Count II, protestor alleges that "the Agency Decision to cancel the Solicitation is pretextual," and in Count III, protestor alleges that "the Agency Decision to cancel the Solicitation is arbitrary and capricious with respect to the Agency's documentation." Among other relief sought, Patriot First requested that this court issue: "An order vacating the Agency's cancellation of the Solicitation;" "A declaration and order that the VA must reinstate the Solicitation, excluding Amendment 0006, and to re-evaluate the most recently submitted amended bid proposals;" "A preliminary injunction enjoining the Agency's cancellation of the Solicitation and enjoining the VA from proceeding with any and all reprocurement efforts for work sought under the Solicitation," and "A permanent injunction enjoining the VA's cancellation of the Solicitation and enjoining the VA from proceeding with any and all reprocurement efforts for work sought under the Solicitation."

In addition to Patriot First's bid protest complaint, protestor also filed a motion for a temporary restraining order (TRO) and preliminary injunction (PI). On June 25, 2025, the court held an initial hearing. On July 2, 2025, given the procurement history, the court issued an Order, which stated, in part:

> As agreed to by defendant's counsel of record, and the agency, and as ordered by the court at the June 25, 2025 hearing, if the agency intends to undertake any significant procurement activity related to the requirement, such as the issuance of a solicitation, in advance of doing so, and with sufficient time for the court to review the action, the defendant shall file a status report to alert the protestor and the court. Also, as ordered at the hearing, protestor's motion for a temporary restraining order and preliminary injunction is deferred at this time, and the parties will brief the relevant issues raised in the protest and discussed at the June 25, 2025 hearing. Protestor's motion to amend the motion for a temporary restraining order and preliminary injunction is denied at this time.

The court also set deadlines to file an administrative record and to brief cross-motions for judgment on the administrative record. Given the lengthy record regarding the Solicitation, and the Solicitation as amended, and in light of the previous allegations by protestor of bias by the VA against protestor and in favor of Veteran's Haven North, the court granted the parties' request to review documents and emails from agency personnel related to the Solicitation and the cancellation, and, if relevant, include the documents and emails in the administrative record. After an extended review process, the parties eventually filed the Administrative Record in in the above captioned protest on May 1, 2026.

After the Administrative Record was filed, on May 6, 2026, the parties filed a joint status report reflecting that "[o]n April 29, 2026, VA issued a Presolicitation Notice

pursuant to Federal Acquisition Regulation 5.101 indicating that a new solicitation will be issued on May 14, 2026." (alteration added). Thereafter, on May 12, 2026, protestor moved for an amended motion for a TRO and PI to prevent the agency from issuing the New Solicitation on May 14, 2026. On May 13, 2026, the court held a hearing to discuss the amended motion for a TRO and preliminary injunction, and on May 14, 2026, the court denied protestor's amended motion for a TRO and preliminary injunction.[9] The court also set a revised briefing schedule for the parties' cross-motions for judgment on the Administrative Record.

In protestor's motion for judgment on the Administrative Record, Patriot First argues that "[t]he VA's cancellation of the Solicitation was improper and should be set aside," as "[t]he VA did not Identify a regulatory basis for its Cancellation Decision." (alterations added). Additionally, protestor argues that the "Cancellation was Improper Under FAR 15.206(e)," and, alternatively "Cancellation [sic] improper under FAR 15.305(b) where no rational basis [sic] provided and reason for Cancellation contradicts VA's own findings in the AR [Administrative Record]." (alterations added). Relatedly, protestor argues that "[t]he VA's Cancellation Decision is not supported by a Source Selection Decision Document and contradicts the evidence in the Administrative Record," and the agency's "inspectors and evaluators found Patriot compliant with ADA requirements throughout the evaluation and award process." (alteration added).

In the defendant's cross-motion for judgment on the Administrative Record, defendant argues that the "VA's decision to cancel its Procurement had a rational basis." Defendant continues:

> The contracting officer reasonably concluded that the best interests of the Government would be served by cancelling the solicitation. She articulated two distinct reasons: first, that neither offeror was eligible for award; and second, that the significant passage of time, turnover of personnel, changes to the FAR, and numerous revisions since the original issuance of the solicitation necessitate restarting the procurement process to ensure that the solicitation's requirements and terms are fully understood and well-defined.

Defendant claims that "Patriot First's Proposal did not meet the Solicitation requirements" because Patriot First's proposal could not comply with Amendment 0007. Additionally,

---

[9] The parties' May 6, 2026 joint status report was the first time the court was made aware that the VA was intending to proceed with a new procurement related to the services in the now-cancelled Solicitation. The lack of notice to the court and the protestor of the agency's decision to proceed, given the procurement history, was directly contrary to the court's previous instruction that if the "agency intends to undertake any significant procurement activity related to the requirement, such as the issuance of a solicitation, in advance of doing so, and with sufficient time for the court to review the action, the defendant shall file a status report to alert the protestor and the court."

defendant contends that "the passage of time, personnel turnover, and repeated revisions support cancellation."

In protestor's reply brief, Patriot First argues that the "VA did not provide contemporaneous support for its Cancellation Decision, contrary to procurement law," and claims that "the VA's conclusory basis for cancelling the Solicitation were [sic] not genuine and thus arbitrary and pretextual." (alteration added). Protestor also argues that "[t]he VA argues that its conclusory reasons for cancelling the solicitation are nearly self-evident. It cites a prolonged procurement process, multiple amendments to the solicitation, and its turnover in its contracting officer and SSEB personnel. These conditions were self-inflicted by the VA[.]" (internal references omitted; alterations added). In defendant's reply, defendant again contends that the "VA's Cancellation Memorandum explains the Agency's rationale," and that "the Contracting Officer's conclusions were not 'disingenuous.'" Furthermore, defendant argues that the "VA's concerns regarding the passage of time, personnel turnover, and Solicitation clarity justified cancellation." The defendant also suggests that the "VA was not required to afford Patriot First another proposal revision."

Included with the protestor's motion for judgment on the Administrative Record in this cancellation case is protestor's "Motion to supplement the Court Record or the Administrative Record." Protestor seeks to add "the VA's New Solicitation, No. 36-C-24226-Q-0118, which was issued after the original Solicitation was cancelled," as well as an Affidavit of Kevin Rodriguez, Director of Operations at Patriot First Professional Services, Inc., which addresses "the capabilities of Patriot's facility in regards to ADA requirements." Defendant opposes the request to supplement the Administrative Record. The parties' cross-motions for judgment on the Administrative Record and protestor's motion to supplement the Administrative Record have been fully briefed, oral argument was held, and the parties filed supplemental submissions.

## DISCUSSION

Protestor challenges the cancellation of the Solicitation by the VA. The Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, §§ 12(a), 12(b), 110 Stat. 3870, 3874 (1996) (codified at 28 U.S.C. § 1491(b)(1)–(4)), amended the Tucker Act to establish a statutory basis for bid protests in the United States Court of Federal Claims. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1330–32 (Fed. Cir. 2001); see also Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1380 (Fed. Cir. 2012) (explaining that the Tucker Act expressly waives sovereign immunity for claims against the United States in bid protests). The statute provides that protests of agency procurement decisions are to be reviewed under APA standards, making applicable the standards outlined in Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), and the line of cases following that decision. See, e.g., Per Aarsleff A/S v. United States, 829 F.3d 1303, 1309 (Fed. Cir. 2016) ("Protests of agency procurement decisions are reviewed under the standards set forth in the Administrative Procedure Act ('APA'), see 28 U.S.C. § 1491(b)(4) (citing 5 U.S.C. § 706), 'by which an agency's decision is to be set aside only if it is arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law.'" (quoting NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004)) (citing PAI Corp. v. United States, 614 F.3d 1347, 1351 (Fed. Cir. 2010))); Safeguard Base Operations, LLC v. United States, 989 F.3d 1326, 1343 (Fed. Cir. 2021); Dell Fed. Sys., L.P. v. United States, 906 F.3d 982, 990 (Fed. Cir. 2018); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332; Res. Conservation Grp., LLC v. United States, 597 F.3d 1238, 1242 (Fed. Cir. 2010) ("Following passage of the APA in 1946, the District of Columbia Circuit in Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), held that challenges to awards of government contracts were reviewable in federal district courts pursuant to the judicial review provisions of the APA."); Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1329 (Fed. Cir.) (citing Scanwell Labs., Inc. v. Shaffer, 424 F.2d at 864, 868, for its "reasoning that suits challenging the award process are in the public interest and disappointed bidders are the parties with an incentive to enforce the law"), reh'g denied (Fed. Cir. 2004); DigiFlight, Inc. v. United States, 165 Fed. Cl. 588, 597 (2023). In Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345 (Fed. Cir. 2004), the Federal Circuit explained that "[u]nder the APA standard as applied in the Scanwell line of cases, and now in ADRA cases, 'a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" Id. at 1351 (alteration added) (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332); see also Mitchco Int'l, Inc. v. United States, 26 F.4th 1373, 1377 (Fed. Cir. 2022); Harmonia Holdings Grp., LLC v. United States, 999 F.3d 1397, 1403 (Fed. Cir. 2021); Palantir USG, Inc. v. United States, 904 F.3d at 990; AgustaWestland N. Am., Inc. v. United States, 880 F.3d 1326, 1332 (Fed. Cir. 2018); Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2003); Toota Grp., LLC v. United States, No. 25-1956, 2026 WL 1971080, at *12 (Fed. Cl. June 24, 2026) ("Judicial review of agency action under the APA typically proceeds on two tracks; the Court could find: (1) the agency's decision lacked either a rational basis or support from the administrative record or was arbitrary and capricious; and/or (2) the agency's procurement procedure involved a violation of regulation or statute.").

When discussing the appropriate standard of review for bid protest cases, the United States Court of Appeals for the Federal Circuit addressed subsections (2)(A) and (2)(D) of 5 U.S.C. § 706, see Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332 n.5, but focused its attention primarily on subsection (2)(A). See Croman Corp. v. United States, 724 F.3d at 1363 ("'[T]he proper standard to be applied [to the merits of] bid protest cases is provided by 5 U.S.C. § 706(2)(A) [(2006)]: a reviewing court shall set aside the agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."'" (alterations in original) (quoting Banknote Corp. of Am. v. United States, 365 F.3d at 1350–51 (citing Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057–58 (Fed. Cir.), reh'g denied (Fed. Cir. 2000)))). The statute says that agency procurement actions should be set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D)

(2024);[10] see also REV, LLC v. United States, 91 F.4th 1156, 1163 (Fed. Cir. 2024); Sys. Stud. & Simulation, Inc. v. United States, 22 F.4th 994, 997 (Fed. Cir. 2021); Veterans Cont. Grp., Inc. v. United States, 920 F.3d 801, 806 (Fed. Cir. 2019) ("In a bid protest, we follow Administrative Procedure Act § 706 and set aside agency action 'if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting Palladian Partners, Inc. v. United States, 783 F.3d 1243, 1252 (Fed. Cir. 2015)); Per Aarsleff A/S v. United States, 829 F.3d at 1309; Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d 1353, 1358 (Fed. Cir. 2015); Orion Tech., Inc. v. United States, 704 F.3d 1344, 1347 (Fed. Cir. 2013); COMINT Sys. Corp. v. United States, 700 F.3d 1377, 1381 (Fed. Cir. 2012) ("We evaluate agency actions according to the standards set forth in the Administrative Procedure Act; namely, for whether they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 5 U.S.C. § 706(2)(A); and Bannum, Inc. v. United States, 404 F.3d at 1351)); Savantage Fin. Servs. Inc., v. United States, 595 F.3d 1282, 1285–86 (Fed. Cir. 2010); Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1358 (Fed. Cir. 2009); Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (noting arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A), and reaffirming the analysis of Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332); Blue & Gold Fleet, L.P. v. United

[10] The language of 5 U.S.C. § 706 provides in full:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D) without observance of procedure required by law;
>
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

States, 492 F.3d 1308, 1312 (Fed. Cir. 2007) ("'[T]he inquiry is whether the [government]'s procurement decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."'" (first alteration added) (quoting Bannum, Inc. v. United States, 404 F.3d at 1351 (quoting 5 U.S.C. § 706(2)(A) (2000)))); NVT Techs., Inc. v. United States, 370 F.3d at 1159 ("Bid protest actions are subject to the standard of review established under section 706 of title 5 of the Administrative Procedure Act ('APA'), 28 U.S.C. § 1491(b)(4) (2000), by which an agency's decision is to be set aside only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A) (2000)." (internal citations omitted)); Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319 ("Consequently, our inquiry is whether the Air Force's procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A) (2000)."); Seabee Constr., Inc. v. United States, 182 Fed. Cl. 75, 84 (2026); Toota Grp., LLC v. United States, 2026 WL 1971080, at *12; Synergy Sols., Inc. v. United States, 133 Fed. Cl. 716, 734 (2017) (citing Banknote Corp. of Am. v. United States, 365 F.3d at 1350); Eco Tour Adventures, Inc. v. United States, 114 Fed. Cl. 6, 22 (2013); Cont., Consulting, Eng'g LLC v. United States, 104 Fed. Cl. 334, 340 (2012). "In a bid protest case, the agency's award must be upheld unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Turner Constr. Co. v. United States, 645 F.3d 1377, 1383 (Fed. Cir.) (quoting PAI Corp. v. United States, 614 F.3d at 1351), reh'g en banc denied (Fed. Cir. 2011); see also Off. Design Grp. v. United States, 951 F.3d 1366, 1371 (Fed. Cir. 2020); Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d at 1358 ("In applying this [arbitrary and capricious] standard to bid protests, our task is to determine whether the procurement official's decision lacked a rational basis or the procurement procedure involved a violation of a regulation or procedure." (alteration added) (citing Savantage Fin. Servs., Inc. v. United States, 595 F.3d at 1285–86)); Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2013); Connected Glob. Sols., LLC v. United States, 162 Fed. Cl. 720, 732 (2022).

The United States Supreme Court has identified sample grounds which can constitute arbitrary or capricious agency action:

> [W]e will not vacate an agency's decision unless it "has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 658 (2007) (alteration added) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)); see also F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 552 (2009); Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d at 1358; Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009), reh'g and reh'g en banc denied (Fed. Cir. 2010); In re Sang Su Lee, 277 F.3d 1338, 1342 (Fed. Cir. 2002) ("[T]he agency tribunal must present a full and reasoned explanation of its decision . . . .

The reviewing court is thus enabled to perform meaningful review . . . ." (alteration and omissions added)). The United States Supreme Court also has cautioned, however, that "courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA." Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 654 (1990) (citing Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc., 435 U.S. 519, 524 (1978)).

Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43 ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."); see also Dell Fed. Sys., L.P. v. United States, 906 F.3d at 990; Turner Constr. Co., Inc. v. United States, 645 F.3d at 1383; R & W Flammann GmbH v. United States, 339 F.3d 1320, 1322 (Fed. Cir. 2003) (citing Ray v. Lehman, 55 F.3d 606, 608 (Fed. Cir.), cert. denied, 516 U.S. 916 (1995)); Synergy Sols., Inc. v. United States, 133 Fed. Cl. at 735 (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332–33). ""'If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations."'" Weeks Marine, Inc. v. United States, 575 F.3d at 1371 (quoting Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971))); Limco Airepair, Inc. v. United States, 130 Fed. Cl. 544, 550 (2017) (citation omitted). Stated otherwise by the United States Supreme Court:

> Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) (internal citations omitted), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977); see also U.S. Postal Serv. v. Gregory, 534 U.S. 1, 6–7 (2001); Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974), reh'g denied, 420 U.S. 956 (1975); DynCorp Int'l, LLC v. United States, 10 F.4th 1300, 1315 (Fed. Cir. 2021) ("Review in bid protests under the arbitrary-and-capricious standard is 'highly deferential.' Under it, we must 'sustain an agency action evincing rational reasoning and consideration of relevant factors.'" (internal citations omitted)); Co-Steel Raritan, Inc. v. Int'l Trade Comm'n, 357 F.3d 1294, 1309 (Fed. Cir. 2004) (In discussing the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard, the Federal Circuit stated "'the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.'" (quoting Tex. Crushed Stone Co. v. United States,

35 F.3d 1535, 1540 (Fed. Cir. 1994))); In re Sang Su Lee, 277 F.3d at 1342; Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1058 ("The arbitrary and capricious standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. at 285)); Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d 955, 959 (Fed. Cir. 1993); Sys. Studies & Simulation, Inc. v. United States, 146 Fed. Cl. 186, 199 (2019); By Light Prof'l IT Servs., Inc. v. United States, 131 Fed. Cl. 358, 366 (2017); BCPeabody Constr. Servs., Inc. v. United States, 112 Fed. Cl. 502, 508 (2013) ("The court 'is not empowered to substitute its judgment for that of the agency,' and it must uphold an agency's decision against a challenge if the 'contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" (internal citations omitted) (quoting Keeton Corrs., Inc. v. United States, 59 Fed. Cl. 753, 755, recons. denied, 60 Fed. Cl. 251 (2004); and Axiom Res. Mgmt. v. United States, 564 F.3d at 1381)), appeal dismissed, 559 F. App'x 1033 (Fed. Cir. 2014); Supreme Foodservice GmbH v. United States, 109 Fed. Cl. 369, 382 (2013); Alamo Travel Grp., LP v. United States, 108 Fed. Cl. 224, 231 (2012); ManTech Telecomms. & Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 63 (2001), aff'd, 30 F. App'x 995 (Fed. Cir. 2002).

In order to have statutory standing to sue as an "interested party" under this provision, a protestor must show that it suffered competitive injury or was "prejudiced" by the alleged error in the procurement process. See REV, LLC v. United States, 91 F.4th at 1163; Inserso Corp. v. United States, 961 F.3d 1343, 1348 (Fed. Cir. 2020); Eskridge & Assocs. v. United States, 955 F.3d 1339, 1344 (Fed. Cir. 2020); Todd Constr., L.P. v. United States, 656 F.3d 1306, 1315 (Fed. Cir. 2011) (To prevail, a bid protester must first "'show that it was prejudiced by a significant error' (i.e., 'that but for the error, it would have had a substantial chance of securing the contract')." (quoting Labatt Food Serv., Inc. v. United States, 577 F.3d 1375, 1378, 1380 (Fed. Cir. 2009)); Blue & Gold Fleet, L.P. v. United States, 492 F.3d at 1317; see also Rex Serv. Corp. v. United States, 448 F.3d 1305, 1308 (Fed. Cir. 2006); Statistica, Inc. v. Christopher, 102 F.3d 1577, 1580–81 (Fed. Cir. 1996); Sci. Applications Int'l Corp. v. United States, 108 Fed. Cl. 235, 281 (2012).

As described above, the above captioned protest concerns the VA's cancelation of the Solicitation. As noted by a Judge of the United States Court of Federal Claims:

> The Tucker Act's waiver of sovereign immunity "covers a broad range of potential disputes arising during the course of the procurement process." Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1380-81 (Fed. Cir. 2012). This Court's jurisdiction extends to a challenge to the government's cancellation of a solicitation. See MORI Assocs., Inc. v. United States, 102 Fed. Cl. 503, 524 (2011) (holding that the government's arbitrary cancellation of a solicitation would be a violation of regulation in connection with a procurement); see also Tolliver Grp., Inc. v. United States, 151 Fed. Cl. 70, 85 (2020).

Rockwell Collins, Inc. v. United States, 169 Fed. Cl. 436, 443 (2024).

Protestor argues "Patriot, as an interested party and actual offeror under the Solicitation, has standing to protest the Agency's arbitrary decision to cancel the Solicitation." The defendant does not argue that Patriot First is an interested party to challenge the cancellation of the Solicitation. The court finds that if there was an alleged error by the VA in the cancellation of the Solicitation, protestor would be able to demonstrate competitive injury or show that protestor was prejudiced by the VA's actions. See REV, LLC v. United States, 91 F.4th at 1163; Eskridge & Assocs. v. United States, 955 F.3d at 1344; see also Todd Constr., L.P. v. United States, 656 F.3d at 1315; Yang Enters., Inc. v. United States, 156 Fed. Cl. 435, 446 (2021) ("Clearly, Yang [the protestor], whose offer was in the competitive range for the cancelled procurement, has alleged that it suffered a 'non-trivial competitive injury' due to the cancellation of the Solicitation." (alteration added; internal reference omitted)). The court finds that protestor "claims an injury — specifically, loss of its opportunity to compete for award under the Solicitation as written — which is traceable to cancellation of the Solicitation, and which could be redressed by this Court." Metrostar Sys., LLC v. United States, 180 Fed. Cl. 708, 713–14 (2026). Therefore, protestor has standing as an interested party to challenge the cancellation of the Solicitation.

Regarding an agency's cancellation of a procurement, a Judge of the United States Court of Federal Claims stated:

> Cancelling a solicitation before award is one of the many ways in which agency contracting officers can exercise their discretion. See Croman Corp. v. United States, 724 F.3d 1357, 1363 (Fed. Cir. 2013); see also Harmonia II, 160 Fed. Cl. at 684; Open Spirit, LLC v. United States, 131 Fed. Cl. 756, 782 (2017); Shields Enters., Inc. v. United States, 28 Fed. Cl. 615, 635 (1993). This Court has sometimes located agency authority to cancel solicitations in FAR § 15.305(b), which provides that an agency "may reject all proposals received in response to a solicitation, if doing so is in the best interest of the Government." See Madison Servs., Inc. v. United States, 92 Fed. Cl. 120, 126 & n.3 (2010); see also 10 U.S.C. § 3301(b) ("All sealed bids or competitive proposals received in response to a solicitation may be rejected if the head of the agency determines that such action is in the public interest.").
>
> Consistent with the usual standard of review, "a rational basis . . . is sufficient" to justify cancellation. Madison Servs., 92 Fed. Cl. at 126 (citing DCMS-ISA, Inc. v. United States, 84 Fed. Cl. 501, 513–14 (2008)); Veterans Contracting Grp., Inc. v. United States, 920 F.3d 801, 806 (Fed. Cir. 2019). Evaluating for rationality means determining "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." Impresa, 238 F.3d at 1332–33 (quotes omitted) (quoting Latecoere Int'l, Inc. v. United States Dep't of Navy, 19 F.3d 1342, 1356 (11th Cir. 1994)).

Metrostar Sys., LLC v. United States, 180 Fed. Cl. at 714 (omission in original; footnote omitted). Another Judge of the United States Court of Federal Claims explained:

> There is no debate that the government generally has broad discretion to assess and define its needs. See Broaden v. Dep't of Transp., 2021 WL 5353890, at *3 (Fed. Cir. Nov. 17, 2021) ("Generally, agencies have broad discretion to define their own needs."). The Federal Circuit has confirmed that such discretion extends to the decision of whether to amend or cancel a solicitation based on changed circumstances. See Croman Corp. v. United States, 724 F.3d 1357, 1364 (Fed. Cir. 2013) (holding that agency's decision to cancel particular contract line items in a FAR part 15 solicitation was reasonable "due to budget constraints and a potential need to evaluate a different aircraft the following fiscal year"). An agency's discretion, however, is not boundless. See Parcel 49C Ltd. P'ship v. United States, 31 F.3d 1147, 1153 (Fed. Cir. 1994) (finding "that GSA had no rational basis for the cancellation").

Seventh Dimension, LLC v. United States, 160 Fed. Cl. 1, 16, recons. in part, 161 Fed. Cl. 110 (2022). The Judge in Seventh Dimension, LLC v. United States considered if the Army had properly complied with FAR 15.206(e) in the cancellation of the procurement:

> In deciding to cancel the Solicitation at issue here, the government did not invoke either 10 U.S.C. § 3301(b) or FAR 15.305(b). Nor does the government rely upon those provisions before this Court. Instead, the government relies solely upon the CO's determination pursuant to FAR 15.206, which generally covers the topic of "[a]mending [a] solicitation."

Seventh Dimension, LLC v. United States, 160 Fed. Cl. at 17 (emphasis and alterations in original; internal references omitted). The Judge in Seventh Dimension, LLC v. United States concluded:

> Beyond making conclusory assertions regarding the need for cancelling the Solicitation, the CO [Contracting Officer] in her Addendum did not apply or address the foregoing considerations in any detail and, instead, invoked a cancellation test that is inconsistent with FAR 15.206(e). In sum, the CO and the government before this Court point to no facts in the administrative record justifying the Army's cancellation of the Solicitation pursuant to FAR 15.206(e).

Seventh Dimension, LLC v. United States, 160 Fed. Cl. at 32 (alteration added). Similarly, in Rockwell Collins, Inc. v. United States, 169 Fed. Cl. 436, another Judge of the United States Court of Federal Claims considered if the agency had complied with FAR 15.206(e) in the cancellation of the procurement. The Judge in Rockwell Collins, Inc. v. United States explained:

> FAR 15.206(e) mandates that the CO cancel the solicitation when there is a proposed amendment that is determined by the CO to meet the requisite level of substantiality. See Madison Servs., Inc. v. United States, 92 Fed. Cl. 120, 126 (2010). The CO can violate FAR 15.206(e) by invoking it as the basis for a cancellation decision and failing to adequately explain why such cancellation was mandated by its terms. See Seventh Dimension, LLC v. United States, 160 Fed. Cl. 1, 30-32 (2022). The Court finds that the Air Force lacked a rational basis to cancel the Solicitation because the Air Force invoked FAR 15.206(e) to cancel the Solicitation but failed to identify a proposed amendment that triggered the cancellation mandate. There is no dispute that in the MFR [Memorandum for Record], the CO cited FAR 15.206(e).

Rockwell Collins, Inc. v. United States, 169 Fed. Cl. at 445–46 (capitalization in original; alteration added). The Judge in Rockwell Collins, Inc. v. United States concluded that "the CO did not identify an amendment proposed for issuance," and that the "CO did not have a rational basis to cancel the Solicitation." Id. at 446, 448. Furthermore, the Judge in Rockwell Collins, Inc. v. United States determined "the administrative record is clear that the CO did not reject Collins' proposal under FAR 15.305(b). Instead, the CO cancelled the Solicitation exclusively under FAR 15.206(e)." Rockwell Collins, Inc. v. United States, 169 Fed. Cl. at 447.

An agency is not "legally required to address every option, but rather to provide a reasonable corrective action and adequately explain its reasoning for doing so." Dell Fed. Sys., L.P. v. United States, 906 F.3d at 998. Cancellation is subject to rational basis review, in which the agency only needs to show a "'coherent and reasonable explanation of its exercise of discretion.'" Open Spirit, LLC v. United States, 131 Fed. Cl. 756, 779 (2017) (quoting Madison Servs., Inc. v. United States, 92 Fed. Cl. 120, 126 (2010)).

As explained by a Judge of the United States Court of Federal Claims, "[c]onsistent with the usual standard of review, 'a rational basis . . . is sufficient' to justify cancellation." Metrostar Sys., LLC v. United States, 180 Fed. Cl. at 715 (quoting Madison Servs., Inc. v. United States, 92 Fed. Cl. at 126) (omission in original; alteration added); see also Veterans Cont. Grp., Inc. v. United States, 920 F.3d at 806; Inverness Techs., Inc. v. United States, 141 Fed. Cl. 243, 251 (2019). The "best interest of the Government" standard articulated in FAR 15.305(b) is an "extraordinarily permissive standard [which] requires nothing more than a reasonable basis for the cancellation decision." Madison Servs., Inc. v. United States, 92 Fed. Cl. at 129 (alteration added).

As referenced above, two FAR provisions govern cancellation of a negotiated procurement, FAR 15.305 and FAR 15.206. First, "[t]he source selection authority may reject all proposals received in response to a solicitation, if doing so is in the best interest of the Government." 48 C.F.R. § 15.305(b) (2025) (alteration added). Second, if an agency must amend the solicitation pursuant to FAR 15.206(a) because of changes to the government's requirements or terms and conditions, the agency may cancel the procurement. See 48 C.F.R. § 15.206(a) (2025). FAR 15.206 is titled: "Amending the solicitation," and provides:

(a) When, either before or after receipt of proposals, the Government changes its requirements or terms and conditions, the contracting officer shall amend the solicitation.

(b) Amendments issued before the established time and date for receipt of proposals shall be issued to all parties receiving the solicitation.

(c) Amendments issued after the established time and date for receipt of proposals shall be issued to all offerors that have not been eliminated from the competition.

(d) If a proposal of interest to the Government involves a departure from the stated requirements, the contracting officer shall amend the solicitation, provided this can be done without revealing to the other offerors the alternate solution proposed or any other information that is entitled to protection (see 15.207(b) and 15.306(e)).

(e) If, in the judgment of the contracting officer, based on market research or otherwise, an amendment proposed for issuance after offers have been received is so substantial as to exceed what prospective offerors reasonably could have anticipated, so that additional sources likely would have submitted offers had the substance of the amendment been known to them, the contracting officer shall cancel the original solicitation and issue a new one, regardless of the stage of the acquisition.

(f) Oral notices may be used when time is of the essence. The contracting officer shall document the contract file and formalize the notice with an amendment (see subpart 4.5, Electronic Commerce in Contracting).

(g) At a minimum, the following information should be included in each amendment:

(1) Name and address of issuing activity.
(2) Solicitation number and date.
(3) Amendment number and date.
(4) Number of pages.
(5) Description of the change being made.
(6) Government point of contact and phone number (and electronic or facsimile address, if appropriate).
(7) Revision to solicitation closing date, if applicable.

48 C.F.R. § 15.206.[11] For the more stringent FAR 15.206 requirements, in a situation in which the agency must amend the procurement, a contracting officer must identify an amendment they wish to implement to meet the mandatory cancellation standard, as "[m]erely contemplating revisions or updates to the acquisition strategy or methods to maximize competition does not constitute an amendment proposed for issuance" and thus does not satisfy the regulation. See Rockwell Collins, Inc. v. United States, 169 Fed. Cl. at 446 (alteration added). Indeed, a "CO [contracting officer] can violate FAR 15.206(e) by invoking it as the basis for a cancellation decision and failing to adequately explain why such cancellation was mandated by its terms." Rockwell Collins, Inc. v. United States, 169 Fed. Cl. at 445-46 (alteration added); see also Seventh Dimension, LLC v. United States, 160 Fed. at 32.

Every cancellation correctly based on FAR 15.206 inevitably meets the more discretionary FAR 15.305 standard; but the reverse is not true. Not every cancellation meeting the discretionary FAR 15.305 cancellation standard will meet the more stringent FAR 15.206 standard, which can result in arbitrary cancellation if an agency specifically and improperly invokes FAR 15.206. Further, in deciding which regulation the agency's cancellation authority is based in, it is a "foundational principle of administrative law" that judicial review of agency action is limited to "the grounds that the agency invoked when it took the action." Dep't of Homeland Sec. v. Regents of the Univ. of California, 591 U.S. 1, 20 (2020) (quoting Michigan v. E.P.A., 578 U.S. 743, 758 (2015)); see also Rockwell Collins, Inc. v. United States, 169 Fed. Cl. at 448 (Air Force could not justify cancellation under broad §15.305(b) standard when contracting officer explicitly and singularly invoked § 15.206(e) as their justification because to do otherwise "would be just the type of impermissible 'post hoc rationalization' the Supreme Court has forbidden." (quoting Bae Sys. Norfolk Ship Repair, Inc. v. United States, 163 Fed. Cl. 217, 227-28 (2022))); but see Metrostar Sys., LLC v. United States, 180 Fed. Cl. at 720 n.9 (holding that despite citation to FAR 15.206(e) in the agency's cancellation decision, the agency's reasoning rested on other grounds of traditional agency discretion and would be evaluated on that basis instead).

---

[11] A Judge of the United States Court of Federal Claims summarized the process by which an agency must evaluate to cancel a procurement pursuant to FAR 15.206:

> If, [1] in the judgment of the contracting officer, [2] based on market research or otherwise, [3] an amendment proposed for issuance after offers have been received [4] is so substantial as to exceed what prospective offerors reasonably could have anticipated, [5] so that additional sources likely would have submitted offers had the substance of the amendment been known to them, [6] the contracting officer shall cancel the original solicitation and issue a new one, [7] regardless of the stage of the acquisition.

Seventh Dimension, LLC v. United States, 160 Fed. at 18 (quoting 48 C.F.R. § 15.206(e)) (emphasis and alteration in original).

As described above, the March 24, 2025 Cancellation memorandum, which was prepared by Ms. Wassink, the "Administrative Contracting Officer," and signed by Ms. Kustra, the "Supervisory Contracting Officer," explained:

> After careful review of the current solicitation history and the recent determination regarding which amendments[[12]] VA can consider during proposal evaluations, it has become necessary to cancel the existing solicitation and re-solicit the requirement under a new solicitation.
>
> The Court of Federal Claims (COFC) determined that Amendment 0006 cannot be used in the evaluation of the proposals. Without Amendment 0006, one of the two responding offerors is no longer eligible to receive an award. Additionally, COFC did not exclude Amendment 0007.[[13]] Consequently, the only remaining offeror is not eligible for award under the solicitation's terms and conditions. As a result, neither offeror may remain eligible for award under the current solicitation.
>
> Approximately three years have passed since the issuance of Solicitation 36C24222R0035 [sic], and none of the original program office stakeholders or contracting staff are involved in the current procurement process. The loss of institutional knowledge with the transition of staff increases the risk that new evaluation and procurement staff may not fully understand the nuances of the requirement, leading to misinterpretations of offeror proposals. Without the original requestors' insights, the SSEB may select a proposal that technically meets the solicitation requirements but does not fully address the operational needs, leading to performance issues post-award. Also, many Federal Acquisition Regulation (FAR) revisions have been published, impacting the terms and conditions of the solicitation. A few examples of impactful FAR changes that transpired over the past two months are the revocation of FAR 52.222-26 Equal Opportunity, FAR 52.222-36 Equal Opportunity for Workers with Disabilities, and elimination

---

[12] Given the very abbreviated nature of the March 24, 2025 Cancellation memorandum, it is open for interpretation if the agency was referencing the "amendments VA can consider" as Amendment 0006 and Amendment 0007 for the now cancelled Solicitation, or if this was a reference to possible amendments to the Solicitation that could be added in the future.

[13] As described above, regarding Amendment 0007, the court in the May 1, 2025 Opinion, determined "Amendment 0007 reflects the agency's need to include the requirements of the Americans with Disabilities Act statute and any applicable regulations implementing the statute as part of the procurement," and "protestor's arguments challenging the inclusion of Amendment 0007 are unsuccessful because the addition after the remand of Amendment 0007 was supported by a sufficient, albeit brief and somewhat confusing, contemporaneous explanation."

> of the Prohibition of Segregated Facilities Clause at FAR 52.222-21, all of which were in the solicitation.
>
> Furthermore, the fact that seven amendments were issued indicates that the Program Office has not fully refined the Performance Work Statement (PWS) and contract terms and conditions. Given the extent of the revisions and the amount of time that has passed since the solicitation was issued, it would be beneficial for the Program Office to reassess its requirements and develop a more structured and comprehensive solicitation. This will ensure clarity for all potential offerors, support a fair and effective competition, and ensure continued and quality services for Veterans.

(footnotes added; alteration added). Recounting this court's earlier Opinion, the March 24, 2025 Cancellation memorandum stated:

> On February 27, 2025, the Court issued a permanent injunction on Amendment 0006, prohibiting its use in the evaluation. However, the new solicitation evaluation had already been completed using Amendment 0006. Without Amendment 0006, one of the two responding offerors, Veteran's Haven North, is no longer eligible to receive an award. Veteran's Haven North does not have a multi-level building, required by the Amendment. COFC did not exclude the use of Amendment 0007, which results in the determination that the only remaining vendor, Patriot First, is ineligible for award under the solicitation's terms and conditions. Patriot First does not fully meet the Americans with Disabilities Act (ADA) guidelines throughout its facility and disabled Veterans could only be accommodated [redacted]. While the first floor of the building could accommodate some Veterans, and currently fulfills vendor placement needs under the bridge contract, VA could not limit future referrals to the program based on ADA compliant space availability. Important areas, such as [redacted]. This would be burdensome and create barriers to achieving Veteran care. The Veteran population is aging and accommodations for wheelchairs and other adaptive equipment or physical limitations is necessary to ensure proper care. There is [redacted] at the facility. As a result of the exclusion of Amendment 0006 and upholding Amendment 0007, neither vendor would meet the requirements under the current solicitation.

Therefore, the March 24, 2025 Cancellation memorandum determined:

> VA cannot make an award to either of the two offerors that submitted proposals. In addition, the PWS requires updates to better define the Government's requirements, expectations and performance standards. If the PWS is unclear, incomplete, or flawed, it can lead to significant risks that may negatively impact contract execution, oversight, and mission success. Furthermore, it is not in the best interest of the Government to further amend or retract issued Amendments from 36C24222R0035 [sic] so

> that either vendor remains eligible for award. Neither vendor is eligible for award if Amendment 0006 is stricken, and Amendment 0007 stands due to the recent COFC decisions.
>
> Based on these factors, the undersigned hereby recommends the cancellation of the current solicitation and the development of a new, well-defined solicitation that accurately reflects the needs of the Program Office. Moreover, it is recommended that the originators of the updated requirement shall be used to evaluate technical capability.

(alteration added).

The court notes that the VA, in its March 24, 2025 Cancellation memorandum, did not explain the basis by which the agency was cancelling the procurement. The March 24, 2025 Cancellation memorandum cited to neither a statutory basis like 10 U.S.C. § 3301(b), nor a regulatory basis like FAR 15.206(e) or FAR 15.305(b). Instead, the March 24, 2025 Cancellation memorandum simply stated: "After careful review of the current solicitation history and the recent determination regarding which amendments VA can consider during proposal evaluations, it has become necessary to cancel the existing solicitation and re-solicit the requirement under a new solicitation." The court also notes that the VA further did not cite to a basis for cancellation when it issued Amendment 0008 cancelling the Solicitation. Instead, Amendment 008 simply provides:

> Amendment 0008: The purpose of this Amendment is to formally cancel the VA New Jersey Healthcare System requirement under Solicitation 36C24222R0035 [sic]. The cancellation is being issued at the request of the requiring activity to allow for further refinement of the Performance Work Statement (PWS) and associated contract terms and conditions. The Government anticipates reissuing the solicitation once the requirement has been revised to accurately reflect the current need.
>
> As a result of this cancellation:
> -No contract will be awarded under this solicitation for the VA New Jersey Healthcare System (VA NJHCS).
> -All proposals received to fulfill the VA NJHCS need will be retained and destroyed in accordance with agency policy.
> -Offerors are not required to acknowledge this amendment.

(alteration added).

Protestor argues that "[t]he VA did not identify a regulatory basis for its Cancellation Decision," and "[t]he Contracting Officer did not rely on FAR 15.206(e) or 15.305(b) to cancel the Solicitation." (alterations added). In response, defendant argues "the FAR does not require a citation" for a cancellation memorandum. The failure to cite to any statutory or regulatory basis for the cancellation is certainly unusual. Generally, regarding cancellations of procurements, other agencies often are far more clear when

explaining the authority on which the government is relying to cancel a procurement. In light of this court's earlier decisions that the VA repeatedly had failed to properly document the bases for its decisions, the court finds it baffling that the agency would again provide such minimal explanations for the agency's decisions. Certainly, it is poor practice in the spirit of the generally open decision-making required by the FAR and by good government that the agency continues to take shortcuts during the procurement process, including during the cancellation, leading to prolonged litigation and delays in the procurement process, which also are unnecessarily time consuming and inefficient to meet the agency's executive responsibilities. The court, however, does agree that there is not a specific requirement to cite to a specific FAR provision to cancel a procurement. In the absence of the agency specifically referencing FAR 15.206(e) or FAR 15.305(b), the court considers whether FAR 15.206(e) or FAR 15.305(b) was the more appropriate FAR section as the basis for the agency to issue the March 24, 2025 Cancellation memorandum. The court notes that FAR 15.305(b) references the "best interest of the Government." By contrast, FAR 15.206 is titled: "Amending the solicitation," and requires specific steps the agency must take to amend a solicitation. In the above captioned cancellation protest, the agency, however, did not explain or follow each of the steps in its March 24, 2025 Cancellation memorandum, including undergoing market research prior to issuing the March 24, 2025 Cancellation memorandum, considering if a possible amendment was "so substantial as to exceed what prospective offerors reasonably could have anticipated," and determining if other offerors may have submitted responses to such an amendment. See Seventh Dimension, LLC v. United States, 160 Fed. at 18. This, therefore, suggests FAR 15.305(b) is more applicable to the above captioned protest. As quoted above, the March 24, 2025 Cancellation memorandum stated: "After careful review of the current solicitation history and the recent determination regarding which amendments VA can consider during proposal evaluations, it has become necessary to cancel the existing solicitation and re-solicit the requirement under a new solicitation."

Given the history of the procurement, the court finds the casual and vague reference to "amendments" in the March 24, 2025 Cancellation memorandum to be insufficient evidence that the agency meant to follow the process in FAR 15.206(e) for cancellation of a procurement. The subsequently issued Amendment 0008, demonstrates that the agency was not intending to amend the Solicitation, but wanted, among other reasons, to "reassess its requirements and develop a more structured and comprehensive solicitation" "[g]iven the extent of the revisions and the amount of time that has passed since the solicitation was issued." (alteration added). This latter language, combined with failure to meet any of the multiple evaluation steps, as quoted above, to cancel the procurement pursuant to FAR 15.206, supports a finding that the proper standard to be applied in the above captioned protest is FAR 15.305(b) to determine if the VA acted arbitrarily and capriciously when the agency cancelled the Solicitation.

Protestor cites to Rockwell Collins, Inc. v. United States, 169 Fed. Cl. 436 and Seventh Dimension, LLC v. United States, 160 Fed. Cl. 1 for support that the VA's cancellation was improper. As described above, however, the Judges in both Rockwell Collins, Inc. v. United States and Seventh Dimension, LLC v. United States, analyzed if

the agency had properly cancelled the procurement under the framework of FAR 15.206(e) before concluding that the agencies had not properly complied with FAR 15.206(e). See Rockwell Collins, Inc. v. United States, 169 Fed. Cl. at 446; Seventh Dimension, LLC v. United States, 160 Fed. Cl. at 32. As described above, although the March 24, 2025 Cancellation memorandum did not identify that the cancellation was issued pursuant FAR 15.206(e), the March 24, 2025 Cancellation memorandum also did not state that it was issued under FAR 15.305(b), as was the case in Rockwell Collins, Inc. v. United States. Furthermore, the defendant did not argue to this court that the VA relied upon FAR 15.206(e) as the basis for the cancellation, as the defendant argued in Seventh Dimension, LLC v. United States. In its cross-motion for judgment on the Administrative Record, referencing FAR 15.206(e), defendant argues: "VA did not rely on this regulatory provision [FAR 15.206(e)] for its cancellation decision. Nowhere in the cancellation memorandum does the contracting officer reference FAR 15.206(e), a proposed amendment, substantial or otherwise, or a determination that prospective offerors would be negatively impacted by any such amendment." (alteration added). Although it is not good practice for an agency to fail to identify the specific legal basis for its decision, as the court has determined above that FAR 15.305(b) is the more proper standard to apply as the basis for the agency to issue the March 24, 2025 Cancellation memorandum, the court concludes that the VA's Cancellation memorandum is not analogous to the Air Force's cancellation in Rockwell Collins or the Army's cancellation in Seventh Dimension, both of which addressed an agency's failure to properly comply with FAR 15.206(e). Although protestor argues that the VA "implicitly" invoked FAR 15.206(e), the court disagrees. As determined above, the VA did not identify an amendment that it intended to issue in the March 24, 2025 Cancellation memorandum, and the cancellation process demonstrates that the agency was not intending to amend the Solicitation consistent with FAR 15.206(e). As noted above, cancellation pursuant to FAR 15.206 requires a deliberate process, which was not undertaken by the agency, making it difficult for plaintiff to show the VA "implicitly" invoked FAR 15.206(e) in this case. Therefore, neither the Rockwell Collins decision nor the Seventh Dimension decision provide support for protestor's claims in the above captioned protest.

Under the more lenient FAR 15.305(b) standard, the court examines the March 24, 2025 Cancellation memorandum's bases identified by the agency for cancellation, including: "[N]either offeror may remain eligible for award under the current solicitation" and "three years have passed since the issuance of Solicitation 36C24222R0035 [sic], and none of the original program office stakeholders or contracting staff are involved in the current procurement process." (alterations added). Regarding the agency's justification for cancelling the Solicitation because "neither offeror may remain eligible for award under the current solicitation," protestor argues that "[t]he VA's Cancellation Decision is not supported by a Source Selection Decision Document and contradicts the evidence in the Administrative Record," and the agency's "inspectors and evaluators found Patriot compliant with ADA requirements throughout the evaluation and award process."[14] (alteration added). At oral argument, counsel for Patriot First emphasized:

---

[14] Neither party argues that Veteran's Haven North was a qualified bidder after the court's earlier Opinion regarding the use of Amendment 0006.

> One of the main reasons the agency gave for canceling the solicitation was that there were no qualified bidders. They -- once this court ordered Amendment 6 stricken, that disqualified the other bidder, the only other bidder, VHN [Veteran's Haven North]. In the same fell swoop, the agency decided that Patriot did not meet the requirements of Amendment 7, that was still part of the solicitation, with conclusory statements and no reasoned analysis to support those conclusions, and factually they are -- they are not supported by the record.

(alteration added). Defendant argues "that neither offeror was eligible for award," and with regard to protestor, defendant claims that "Patriot First's proposal did not meet the Solicitation requirements" because the "Patriot First's proposal did not meet the requirements of amendment 7."

As described above, the March 24, 2025 Cancellation memorandum explained:

> After careful review of the current solicitation history and the recent determination regarding which amendments VA can consider during proposal evaluations, it has become necessary to cancel the existing solicitation and re-solicit the requirement under a new solicitation.
>
> The Court of Federal Claims (COFC) determined that Amendment 0006 cannot be used in the evaluation of the proposals. Without Amendment 0006, one of the two responding offerors is no longer eligible to receive an award. Additionally, COFC did not exclude Amendment 0007. Consequently, the only remaining offeror is not eligible for award under the solicitation's terms and conditions. As a result, neither offeror may remain eligible for award under the current solicitation.

Recounting this court's earlier Opinion, the March 24, 2025 Cancellation memorandum stated:

> On February 27, 2025, the Court issued a permanent injunction on Amendment 0006, prohibiting its use in the evaluation. However, the new solicitation evaluation had already been completed using Amendment 0006. Without Amendment 0006, one of the two responding offerors, Veteran's Haven North, is no longer eligible to receive an award. Veteran's Haven North does not have a multi-level building, required by the Amendment. COFC did not exclude the use of Amendment 0007, which results in the determination that the only remaining vendor, Patriot First, is ineligible for award under the solicitation's terms and conditions. Patriot First does not fully meet the Americans with Disabilities Act (ADA) guidelines throughout its facility and disabled Veterans could only be accommodated on [redacted]. While the first floor of the building could accommodate some Veterans, and currently fulfills vendor placement needs under the bridge

> contract, VA could not limit future referrals to the program based on ADA compliant space availability. Important areas, such as [redacted]. This would be burdensome and create barriers to achieving Veteran care. The Veteran population is aging and accommodations for wheelchairs and other adaptive equipment or physical limitations is necessary to ensure proper care. There is no elevator or lift at the facility. As a result of the exclusion of Amendment 0006 and upholding Amendment 0007, neither vendor would meet the requirements under the current solicitation.

Therefore, the March 24, 2025 Cancellation memorandum concluded that the "VA cannot make an award to either of the two offerors that submitted proposals." As described above, however, protestor argues that the VA "inspectors and evaluators found Patriot compliant with ADA requirements throughout the evaluation and award process." The court notes that there is no document in the Administrative Record, prior to the March 24, 2025 Cancellation memorandum, that indicates Patriot First did not meet the requirements of the Solicitation. Specifically, the Administrative Record reflects that Patriot First was in the competitive range and was not disqualified from the now cancelled procurement. The January 17, 2025 Competitive Range Determination Letter sent to Patriot First stated:

> Thank you for your offer in response to Request for Proposal (RFP) 36C24222R0035 [sic]. The Government has completed its evaluation of all proposals and has determined that award of the resultant contract cannot be made without entering into discussions. It has been determined that your company's offer is within the competitive range of the most highly rated proposals submitted for this acquisition.

(alteration added). The January 17, 2025 Competitive Range Determination Letter only identified potential weakness with protestor's proposal, including an "Incomplete floor plan," and "requirements related to isolation/quarantine rooms," and cited no disqualifying portions of Patriot First's proposal which would remove protestor's proposal from the competitive range. Defendant tries to argue that this "perhaps identifies an oversight. Indeed, the SSEB's evaluations do not assess the accessibility of Patriot First's facility at all, except to note that the quarantine room Patriot First initially identified was on the second floor, and therefore inaccessible to disabled veterans." In addition, the March 24, 2025 Cancellation Memorandum stated: "The ACO and CO evaluated past performance, price and SDVOSB status. An award decision was made based on technical capability, past performance, SDVOSB status and price. The decision was not announced to the vendors due to ongoing litigation. Veteran's Haven North was to be the prospective successful offeror." The court notes that the award decision is not in the Administrative Record before the court, nor is a Source Selection decision document in the Administrative Record. Defendant argues that "[w]hen the Court permanently enjoined amendment 6, that decision became obsolete, so it was never finalized. It is unclear why this is a problem – there was no award, therefore there need be no award decision." (alteration added). The court notes that, without the award decision, or a Source Selection

decision document, there is no contemporaneous evaluation of the proposals to determine if the proposals could or could not meet the requirements of the Solicitation.

The court notes that the only basis that Patriot First is not eligible for award is the March 24, 2025 Cancellation memorandum's statement that

> COFC [The United States Court of Federal Claims] did not exclude the use of Amendment 0007, which results in the determination that the only remaining vendor, Patriot First, is ineligible for award under the solicitation's terms and conditions. Patriot First does not fully meet the Americans with Disabilities Act (ADA) guidelines throughout its facility and disabled Veterans could only be accommodated on the ground floor of the multi-level building. While the first floor of the building could accommodate some Veterans, and currently fulfills vendor placement needs under the bridge contract, VA could not limit future referrals to the program based on ADA compliant space availability. Important areas, such as [redacted]. This would be burdensome and create barriers to achieving Veteran care. The Veteran population is aging and accommodations for wheelchairs and other adaptive equipment or physical limitations is necessary to ensure proper care. There is no elevator or lift at the facility. As a result of the exclusion of Amendment 0006 and upholding Amendment 0007, neither vendor would meet the requirements under the current solicitation.

(alteration added).

Defendant argues "[t]he cancellation memorandum explains that Patriot First's facility could only accommodate disabled veterans on its ground floor," and "[t]he contracting officer further explains that there is no elevator or lift at the facility and thus the inaccessibility of the basement 'would be burdensome and create barriers to achieving Veteran care.' This assessment is corroborated by the floor plans Patriot First submitted with its final proposal." (alterations added; internal reference omitted). Therefore, defendant argues "[t]he contracting officer's memorandum explains that Patriot First did not fully meet the accessibility requirements of the solicitation," and the "VA's decision to cancel its Procurement had a rational basis." (alteration added). Even accepting that Amendment 0007 could be part of the Solicitation moving forward, protestor argues that "[i]n its Cancellation Memorandum, the VA makes only general references to Patriot's proposal documentation, claiming simply that Patriot 'is ineligible for award under the solicitation's terms and conditions' <u>without specifying</u> which solicitation clauses were not met or how Patriot's facility did not comply with same." (emphasis in original; alteration added). The March 24, 2025 Cancellation memorandum is vague as to why is Patriot First is "ineligible for award under the solicitation's terms and conditions," especially as no document in the Administrative Record reached a contemporaneous similar conclusion. As argued by protestor, "no explanation was provided in the Cancellation Memorandum as to why the Contracting Officer was now disagreeing with a subject-matter expert who had recently evaluated Patriot's facility and found it to be fully ADA-compliant." Protestor continues: "[I]t remains undeniable that the

descriptions of the specific aspects of Patriot's proposal and how they did or did not meet the solicitation's requirements were not present in the VA's Cancellation Memorandum, and the VA's failure to provide contemporaneous justification for its decision constitutes a clear violation of procurement regulations and law." (all emphasis in original; alteration added). In fact, the March 24, 2025 Cancellation memorandum only generally refers to Patriot First's facilities, without explaining what provisions of the Solicitation were not met by the design of the protestor's facilities. The March 24, 2025 Cancellation memorandum does not even explain how the VA concluded that "Patriot First does not fully meet the Americans with Disabilities Act (ADA) guidelines throughout its facility," although counsel for the defendant has made post-hoc arguments in defendant's submissions and again at oral argument, that the VA's conclusions based on the floor plan and other documentation submitted by Patriot First in response to the Solicitation.

Separately, protestor argues that even if the court were to accept statements in the March 24, 2025 Cancellation memorandum as correct,

> [t]hese statements are made based upon a floorplan that was assembled and submitted to the VA at a time when Amendment 0006 was included in the Solicitation, and thus there was no requirement to separate residents by gender and floor. Following the court's striking of Amendment 0006 on February 27, 2025, the VA should have formally amended the Solicitation to so reflect and allow bidders to submit amended proposals. However, it did not.

(alteration added; internal reference omitted). At oral argument protestor's counsel reiterated:

> Once this court struck Amendment 6, that materially changed the solicitation, which required an amendment to the solicitation that never happened. And because there was no amendment to the solicitation before the agency re-evaluated proposals, Patriot First was deprived -- and VHN, for that matter, any qualified bidder at that point would be entitled to revise their bid proposal to match the amended proposal.

The defendant responds that the "VA was not required to afford Patriot First another Proposal Revision." Defendant argues that

> the contracting officer was not required to provide Patriot First yet another chance to amend its proposal prior to determining that cancellation was in the best interest of the Government. Patriot First had the opportunity to submit a proposal in response to amendment 7, and the proposal it submitted did not address all the requirements.

Before this court, defendant fails to address that there were no proposals that could be evaluated before the VA once the court enjoined the agency from proceeding with the procurement with Amendment 0006 included. The agency could have waited until after

the conclusion of the prior litigation in Case No. 24-1365C to continue with the procurement, but instead the agency solicited proposals from Veteran's Haven North and Patriot First with both Amendment 0006 and Amendment 0007 included in the Solicitation. The agency ran the risk, which was realized, that the court would invalidate Amendment 0006 to the Solicitation once the amendments were again included in the Solicitation. As reflected in the March 24, 2025 Cancellation memorandum: "On February 27, 2025, the Court issued a permanent injunction on Amendment 0006, prohibiting its use in the evaluation. However, the new solicitation evaluation had already been completed using Amendment 0006." All of the proposals before the VA included responses to Amendment 0006, and none of them were responsive after the court's May 1, 2025 Opinion, which enjoined the VA from continuing with the Solicitation with Amendment 0006 included. Nor could the agency rationally evaluate the proposals with the included responses to Amendment 0006.

As noted by protestor, "[e]ssentially, the VA determined that Patriot First was 'no longer eligible for award' based only on general statements about Patriot's facility, conclusions the VA reached by reviewing Patriot's FPR [Final Proposal Revisions] documents which were prepared and submitted for a solicitation that had different requirements than what the Solicitation contained at the time of the VA's review." (alterations added). Even under the more lenient FAR 15.305(b) standard of review, the agency's conclusions in the March 24, 2025 Cancellation memorandum that "neither vendor would meet the requirements under the current solicitation," were insufficient, arbitrary and capricious. See REV, LLC v. United States, 91 F.4th at 1163; Sys. Stud. & Simulation, Inc. v. United States, 22 F.4th at 997; see also Veterans Cont. Grp., Inc. v. United States, 920 F.3d at 806 ("In a bid protest, we follow Administrative Procedure Act § 706 and set aside agency action 'if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting Palladian Partners, Inc. v. United States, 783 F.3d at 1252)).

Turning to the defendant's second alleged basis to cancel the Solicitation, that "three years have passed since the issuance of Solicitation 36C24222R0035 [sic], and none of the original program office stakeholders or contracting staff are involved in the current procurement process," protestor notes that the VA "cites a prolonged procurement process, multiple amendments to the solicitation, and its turnover in its contracting officer and SSEB personnel," and argues "[t]hat conditions were self-inflicted by the VA[.]" (internal references omitted; alterations added). Patriot First also argues that the "VA's conclusions regarding generalized staff turnover and length of time do not inherently justify cancellation absent specific deficiencies tied to requirements." In response, defendant argues that protestor's "suggestion that a contracting officer must pile up the evidence to justify a cancellation decision finds no support in FAR 15.305(b)," and states "[a]lthough it is certainly sufficient to identify problems with the solicitation requirements, it is not necessary." (alteration added). Defendant also contends even if protestor's claims that the agency's delays were self-inflected are correct, "it does not render the decision to cancel irrational. If Patriot First's reasoning were to be followed, an agency that designed an inherently flawed solicitation would be prevented from cancelling it."

Defendant also argues that "the administrative record demonstrates that the contracting officer and SSEB members changed throughout the life of the procurement," and

> it is undisputed that the procurement lasted nearly three years. It is also undisputed that the solicitation was substantively revised by amendments 6 and 7, that those revisions were disputed, and that the Court in a prior protest determined that the agency failed to articulate a sufficient rationale for at least some of the changes in amendment 6.

(internal reference omitted).

The March 24, 2025 Cancellation memorandum section titled "**<u>HISTORY</u>**" explained:

> The procurement process has been complex, with multiple transitions in key acquisition personnel and ongoing protests affecting its timeline. Initially, the solicitation was issued on July 8, 2022, and publicly posted on SAM.gov by Heather Schrader, Contract Specialist (CS) and Allan Preston, Contracting Officer (CO). The VA acquisition personnel changed to Shawn Lawrence, CS and Jadwiga Kustra, CO in March of 2024. In November of 2024, the VA acquisition personnel again changed to Danelle Wassink, Administrative Contracting Officer (ACO) and Jadwiga Kustra, Source Selection Authority (SSA).
>
> As a result of a protest challenging the integrity of the initial evaluation process, the Government implemented corrective action by replacing the original Source Selection Evaluation Board (SSEB) with a newly appointed board composed of members who were not directly involved in the procurement. The change was made to eliminate alleged, through unproven, potential favoritism or bias, ensuring that the evaluation was conducted with complete impartiality. The new SSEB, selected based on similar expertise and independence from prior procurement actions, conducted a fresh assessment of proposals in accordance with the established evaluation criteria. Due to the change in the SSEB, members were provided the PWS and source selection information two weeks prior to the initial evaluation so that they could familiarize themselves with the requirement.
>
> Although the corrective action of replacing the SSEB was meant to eliminate potential favoritism, it removed the people with the most in-depth understanding of the requirement's intent, scope, and critical needs. Generally, the originators' involvement helps ensure that proposals are evaluated with a clear understanding of the technical and functional aspects of the procurement. Replacement of the SSEB caused delays and inefficiencies; the new evaluators required additional time to familiarize themselves with the requirement, delaying the procurement process.

(capitalization and emphasis in original). The March 24, 2025 Cancellation memorandum noted that that "the award for solicitation 36C24222R0035 [sic] was made to Veteran's Haven North on November 29, 2022, contract number 36C24223D0027" and explained:

> Due to a protest filed with the Government Accountability Office (GAO), followed by subsequent litigation at the COFC, the award to Veteran's Haven North was terminated for convenience on August 29, 2024. Due to ongoing litigation, no services were performed under contract 36C24223D0027 from the date of award through the termination date. Instead, two short-term bridge contracts have been awarded to Patriot First to ensure the uninterrupted provision of services to Veteran beneficiaries of the VA New Jersey Health Care System while the protests are ongoing. Patriot First's bridge contract number 36C24223D0053 provided services April 1, 2023, through September 30, 2024. A subsequent bridge contract, 36C24224D0065, is currently active.

(alteration added). As quoted above, the March 24, 2025 Cancellation memorandum noted:

> Approximately three years have passed since the issuance of Solicitation 36C24222R0035 [sic], and none of the original program office stakeholders or contracting staff are involved in the current procurement process. The loss of institutional knowledge with the transition of staff increases the risk that new evaluation and procurement staff may not fully understand the nuances of the requirement, leading to misinterpretations of offeror proposals. Without the original requestors' insights, the SSEB may select a proposal that technically meets the solicitation requirements but does not fully address the operational needs, leading to performance issues post-award. Also, many Federal Acquisition Regulation (FAR) revisions have been published, impacting the terms and conditions of the solicitation. A few examples of impactful FAR changes that transpired over the past two months are the revocation of FAR 52.222-26 Equal Opportunity, FAR 52.222-36 Equal Opportunity for Workers with Disabilities, and elimination of the Prohibition of Segregated Facilities Clause at FAR 52.222-21, all of which were in the solicitation.
>
> Furthermore, the fact that seven amendments were issued indicates that the Program Office has not fully refined the Performance Work Statement (PWS) and contract terms and conditions. Given the extent of the revisions and the amount of time that has passed since the solicitation was issued, it would be beneficial for the Program Office to reassess its requirements and develop a more structured and comprehensive solicitation. This will ensure clarity for all potential offerors, support a fair and effective competition, and ensure continued and quality services for Veterans.

(alteration added).

The court agrees with protestor that the delays and turnover in VA personnel were among the largely self-inflected mistakes by the agency in the procurement process related to the Solicitation. The court, as described throughout this Opinion, has documented the problems with the agency's approach to the Solicitation and procurement process, including the failure to contemporaneously explain and document its decisions or respond to identified issues with the procurement. Despite the foregoing, the court also believes an agency is generally entitled to deference to determine the agency's requirements for the future. As quoted above,

> [t]here is no debate that the government generally has broad discretion to assess and define its needs. See Broaden v. Dep't of Transp., 2021 WL 5353890, at *3 (Fed. Cir. Nov. 17, 2021) ("Generally, agencies have broad discretion to define their own needs."). The Federal Circuit has confirmed that such discretion extends to the decision of whether to amend or cancel a solicitation based on changed circumstances.

Seventh Dimension, LLC v. United States, 160 Fed. Cl. at 16 (alteration added). Additionally, as noted above, with respect to agency needs, "[t]he court is not empowered to substitute its judgment for that of the agency." Co-Steel Raritan, Inc. v. Int'l Trade Comm'n, 357 F.3d at 1309 (quotation omitted; alteration added). The court does not find it unreasonable that the agency would want to re-evaluate its needs and contract requirements after almost three years, since the issuance of the VA's June 3, 2022 Acquisition Plan for Solicitation No. 36-C-24222-R-0035, to meet the more current needs of the agency and its clients, the homeless veterans for whom the services are to be provided. The court understands that the agency may be concerned also about "[t]he loss of institutional knowledge with the transition of staff as it increases the risk that new evaluation and procurement staff may not fully understand the nuances of the requirement, leading to misinterpretations of offeror proposals." (alteration added). The court finds that the identified changes of requirements over time and the agency personnel turnover is a legitimate concern and a rational one for the VA to consider. The court reaches this result considering only the information in the Administrative Record in the current bid protest, Case No. 25-1037C, and the information in the March 24, 2025 Cancellation memorandum, and not in any subsequent actions by the VA during its development of a new procurement for the required services for the veterans.

The court concludes that, unlike the agency's first basis for cancellation, that "neither vendor would meet the requirements under the current solicitation," that the agency's second argument about the length of time and the changes to the agency's personnel meets the requirements under FAR 15.305(b) to cancel the Solicitation and, therefore, the VA's actions were not arbitrary or capricious. See FAR 15.305(b); see also Metrostar Sys., LLC v. United States, 180 Fed. Cl. at 715 (quoting Madison Servs., Inc. v. United States, 92 Fed. Cl. at 126) ("Consistent with the usual standard of review, 'a rational basis . . . is sufficient' to justify cancellation.") (omission in original); Open Spirit, LLC v. United States, 131 Fed. Cl. at 779 (quoting Madison Servs., Inc. v. United States, 92 Fed. Cl. at 126) (cancellation is subject to rational basis review, in which the agency

only needs to show a "coherent and reasonable explanation of its exercise of discretion"). As explained by the United States Court of Appeals for the Federal Circuit, "[r]eview in bid protests under the arbitrary-and-capricious standard is 'highly deferential.' Under it, we must 'sustain an agency action evincing rational reasoning and consideration of relevant factors.'" DynCorp Int'l, LLC v. United States, 10 F.4th at 1315 (alteration added; internal citations omitted). Despite its numerous errors during the course of the procurement process, the VA has now demonstrated a basis for the cancellation of Solicitation No. 36-C-24222-R-0035 due to the length of time of the procurement and the changes at the agency which makes the agency's cancellation appropriate under the circumstances.

Although the court concludes that the agency has articulated a coherent basis for cancelling the Solicitation, the court agrees that with the United States Supreme Court, the United States Court of Appeals for the Federal Circuit, and Judges of the United States Court of Federal Claims, who have all explained:

> It is axiomatic "that an agency must explain its action with sufficient clarity to permit 'effective judicial review.' Failure to provide the necessary clarity for judicial review requires the agency action be vacated." Timken U.S. Corp., 421 F.3d at 1355 (quoting Camp v. Pitts, 411 U.S. 138, 142–43, 93 S. Ct. 1241, 36 L. Ed. 2d 106 (1973)). "Specifically, the agency must articulate the reasons for its procurement decision including a rational connection between the facts found and the choice made." Lab'y Corp. of Am. Holdings, 116 Fed. Cl. at 652 (citing Distributed Sols., Inc. v. United States, 104 Fed. Cl. 368, 377 (2012)).

DigiFlight, Inc. v. United States, 165 Fed. Cl. at 609. Failure on the part of the agency moving forward to document and explain the decision-making process by the agency may well result in the court vacating further agency actions to procure the services for the veterans who are the reason for the procurement. Throughout the now-cancelled procurement, which Patriot First repeatedly challenged, the VA has failed to respond to, adjust, even pursuant to Orders of this court, and to fully document the bases for its actions. Such failures on the part of the agency should not continue.

Motion to Supplement the Administrative Record

As described above, protestor also has filed a "Motion to supplement the Court Record or the Administrative Record." Protestor sought to add to the record "the VA's New Solicitation, No. 36-C-24226-Q-0118, which was issued after the original Solicitation was cancelled," as well as an Affidavit of Kevin Rodriguez, Director of Operations at Patriot First Professional Services, Inc., which addresses "the capabilities of Patriot's facility in regards to ADA requirements." Defendant opposes the request to supplement the Administrative Record.

The United States Supreme Court has held that when "reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light

of the existing administrative record." Dep't of Com. v. N.Y., 588 U.S. 752, 780 (2019) (citing Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc., 435 U.S. at 549 (calling the United States Supreme Court's establishment of this principle "abundantly clear") and Camp v. Pitts, 411 U.S. 138, 142–43 (1973)). The United States Court of Appeals for the Federal Circuit in Axiom Resource Management, Inc. v. United States, 564 F.3d 1374, provides the following test for supplementing the administrative record:

> The focus of judicial review of agency action remains the administrative record, which should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the APA. Faced with the request to supplement the administrative record in this case, the Court of Federal Claims should have determined whether supplementation of the record was necessary in order not "to frustrate effective judicial review."

Axiom Res. Mgmt., Inc. v. United States, 564 F.3d at 1381 (quoting Camp v. Pitts, 411 U.S. at 142–43) (emphasis added). The Federal Circuit in Axiom also characterized the test as "supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" Axiom Res. Mgmt., Inc. v. United States, 564 F.3d at 1380 (quoting Murakami v. United States, 46 Fed. Cl. 731, 735 (2000), aff'd, 398 F.3d 1342 (Fed. Cir. 2005)); see also Kayhan Space Corp. v. United States, 181 Fed. Cl. 659, 692 (2026); Insight Pub. Sector, Inc. v. United States, 157 Fed. Cl. 398, 406 (2021). As explained by another Judge of the United States Court of Federal Claims: "Supplementation of the administrative record 'should be limited to cases in which the omission of extra-record evidence precludes effective judicial review,' id. [Axiom Res. Mgmt., Inc. v. United States, 564 F.3d] at 1380 (cleaned up), because 'the focal point for judicial review [under the APA] should be the administrative record already in existence, not some new record made initially in the reviewing court.'" Aery Aviation, LLC v. United States, 179 Fed. Cl. 392, 407 (2025) (quoting Camp v. Pitts, 411 U.S. at 142) (first alteration added). As described by another Judge of the United States Court of Federal Claims: "The administrative record in an APA case (or, as here, a case applying APA review) consists of 'all documents and materials that the agency directly or indirectly considered.'" CAN Softtech, Inc. v. United States, 173 Fed. Cl. 480, 485, recons. denied, 174 Fed. Cl. 412 (2024) (quoting Safari Club Int'l v. Jewell, 111 F. Supp. 3d 1, 4 (D.D.C. 2015); see also Cubic Applications, Inc. v. United States, 37 Fed. Cl. 339, 342 (1997) (citing Camp v. Pitts, 411 U.S. at 142) ("The court's inquiry is therefore based on an examination of the 'whole record' before the agency; that is, all the material that was developed and considered by the agency in making its decision.").

The court notes that the New Solicitation was issued on May 15, 2026 and was not before the VA when the March 24, 2025 Cancellation decision was executed. Therefore, it would not be appropriate to include the New Solicitation as part of the record in the above captioned protest regarding the cancellation. Moreover, the omission of the New Solicitation in the current record before the court would not preclude effective judicial review. See Axiom Res. Mgmt., Inc. v. United States, 564 F.3d at 1381. As the New Solicitation is not part of the Administrative Record, and, therefore, not considered for the parties' cross-motions for judgment on the Administrative Record, the court does not

consider protestor's arguments related to the new Solicitation, including, that the "VA's New Solicitation continues pattern of conforming Solicitation for and against individual bidders, confirming [the] cancellation was arbitrary and pretextual," that the "VA's New Solicitation continues pretext from Cancellation Decision by improperly reintroducing Amendment 0006 language," and that the "VA's New Solicitation seeks to exclude Patriot from competition for award with arbitrary and pretextual 33% ADA requirement." (alteration added).

As determined above, it was not arbitrary and capricious for the agency to "reassess its requirements and develop a more structured and comprehensive solicitation," "[g]iven the extent of the revisions and the amount of time that has passed since the solicitation was issued," and because "the PWS requires updates to better define the Government's requirements, expectations and performance standards." (alteration added). The court notes, however, that this conclusion is based on information in the March 24, 2025 Cancellation decision. As referenced above, the protestor has already filed a pre-award bid protest, Case No. 26-768C, regarding the New Solicitation, which is outstanding. All of the information in the above captioned protest regarding cancellation will be available for the court's review in the new pre-award protest, Case No. 26-768C, and the court will have the benefit in the new pre-award protest of comparing the cancelled Solicitation, and the language of the March 24, 2025 Cancellation decision, with the New Solicitation to determine if the agency truly needed to "better define the Government's requirements, expectations and performance standards" and if the agency did "develop a more structured and comprehensive solicitation," or if the New Solicitation was substantially the same as the cancelled Solicitation. If the New Solicitation is, in fact, substantially the same as the cancelled Solicitation, this would not only undercut the agency's claimed need to cancel the Solicitation, but could strengthen the protestor's argument across four separate bid protests that the agency was determined not to make an award to Patriot First. Protestor may make the pretextual arguments quoted above in its already filed new pre-award bid protest.

The court reiterates, for the benefit of the parties, the court's analysis in its previous May 1, 2025 Opinion regarding Professional Service Industries, Inc. v. United States, 129 Fed. Cl. 190 (2016) and whether an agency's actions can be considered to be conforming a solicitation to a particular offeror's proposal. In Professional Service Industries, Inc. v. United States, 129 Fed. Cl. 190, the trial court Judge included a detailed examination of an agency conforming a solicitation to a particular offeror and requiring changes made to the solicitation after the GAO sustained a protest. In Professional Service Industries, Inc. v. United States, the Federal Highway Administration (FHWA) issued a solicitation for the "on-site and off-site engineering and technical services to support research activities at an FHWA structural testing facility," and included staffing requirements, specifically the Program Manager position, under the category of "Key Personnel." See id. at 193-94. The agency received two proposals, one from Professional Service Industries, Inc. (PSI) and one from Genex Systems, LLC (Genex). See id. at 193. After multiple GAO protests, the "GAO sustained PSI's [Professional Service Industries, Inc.] protest as to the technical evaluation, concluding that 'the record demonstrates that the proposed individual did not

meet the minimum qualifications of the [PM] position.'" Id. at 199 (first alteration added). The Judge in in Professional Service Industries, Inc. v. United States noted that

> in response to GAO's decision upholding PSI's protest, FHWA proposed to amend the solicitation to: 1) change the duties that the PM would be required to perform under the contract; 2) require the PM to spend at least fifteen hours per week on-site; 3) modify the qualifications and experience required of candidates for the position; and 4) allow offerors to meet the technical requirements by providing support to PMs who lacked the qualifications and experience required under the solicitation.

Id. at 202. The Judge in Professional Service Industries, Inc. v. United States also noted that

> PSI points out that these changes had the effect of conforming the new solicitation to Genex's original proposal. It argues that it was arbitrary, capricious, an abuse of discretion, and contrary to law for FHWA to implement this corrective action because amending the solicitation was not "narrowly targeted" to remedy the defect that GAO identified (which involved an evaluation error).

Id. In his analysis, the Judge determined:

> The Court agrees with PSI that the administrative record contains little, if any, evidence that FHWA conducted an assessment of its needs after GAO's decision. Further, even assuming that such an assessment occurred, the record does not supply sufficient evidence that it was reasonable for FHWA to conclude that the original requirements it set for the PM position (in terms of both the duties and qualifications) did not accurately reflect its needs.
>
> First, the administrative record provides no explanation of FHWA's decision to change the PM's duties and qualifications. The sole "explanation" of FHWA's decision contained in the administrative record consists of two bullet points in the brief letter that FWHA sent to GAO after it decided to amend the solicitation rather than to re-evaluate the proposals of Genex and PSI under the existing solicitation. In those two bullet points FHWA merely stated, without explanation, that it intended to 1) "amend[ ] the technical requirements for key personnel and . . . seek revised proposals from the two organizations that had submitted proposals under the solicitation" and 2) "evaluate the revised proposals and issue a source selection decision based upon that evaluation." This language establishes only that the agency made a decision to amend the technical requirements and to solicit and evaluate new proposals. But neither the letter to GAO nor any other document in the record reflects that the agency's decision to take these steps was based on any assessment of whether the duties and

> experiential requirements set forth in the original solicitation for the PM position accurately reflected the agency's needs. At most, one might infer that some assessment was conducted based on FHWA's conclusory statement in the letter that it had reviewed GAO's decision and believed that its corrective action was consistent with GAO's recommendation. But that inference alone is an inadequate basis for upholding the corrective action given the lack of other evidence in the record regarding FHWA's decision-making process.

Id. at 204 (alterations and omissions in original; internal references omitted). The Judge in Professional Service Industries, Inc. v. United States continued:

> After the second protest, in which GAO sustained PSI's second challenge, FHWA issued Amendment 002, which changed the duties of the PM and watered down the qualification requirements for the position. Thus, as noted, under the revised solicitation, the PM is no longer responsible for determining man-hour and hard cost requirements of all task orders, nor is the PM responsible for performance appraisals, time and attendance, or disciplinary actions. Additionally, under the revised solicitation, the PM no longer need [sic] demonstrate experience "managing structural testing facilities" and "directing a diverse team of researchers and technicians"; it is sufficient if he or she demonstrates experience "overseeing projects in a testing facility" and "coordinating the efforts of a diverse team of researchers and technicians."
>
> Presumably, the agency had good reasons for assigning the duties and qualifications it originally established for the PM. While an agency that changes its policy "need not demonstrate to a court's satisfaction that the reasons for the new policy are better than the reasons for the old one" in order to survive review under the arbitrary and capricious standard, "a reasoned explanation is needed for disregarding facts and circumstances that underlay . . . the prior policy." See FCC v. Fox Television Stations, Inc., 556 U.S. 502, 515–16, 129 S. Ct. 1800, 173 L. Ed. 2d 738 (2009) (emphasis in original). No such explanation is apparent or can be inferred on the basis of the present administrative record.
>
> Perhaps most critically, it is of concern to the Court that the changes in responsibilities and qualifications that FHWA proposed have the effect of conforming the solicitation precisely to the experience and qualifications of Genex's proposed PM, [. . .]. Similarly, the amendment of the solicitation to provide that the PM's lack of experience could be mitigated through either "training and/or support" also conforms the solicitation precisely to Genex's proposal to provide [. . .] with corporate support rather than management training. And the new requirement that the PM spend at least fifteen hours per week on-site seems to dovetail with the fact that [. . .] (unlike PSI's current and proposed PM) is already required to be on-site to perform his

> research engineer duties. The agency's corrective action, in other words, gives the appearance of securing a result that is precisely the opposite of what the procurement rules ordinarily require. For rather than ensuring that an offeror's proposal conform strictly to the requirements of the solicitation, the agency has changed the solicitation to conform to an offeror's proposal.

Prof'l Serv. Indus., Inc. v. United States 129 Fed. Cl. at 207 (first alteration added; emphasis and omissions in original; internal references omitted). The Judge concluded:

> In short, the record before the Court is devoid of evidence that the agency reviewed its needs, reasonably assessed them, and had a rational basis for deciding that the original solicitation did not meet them. Accordingly, FHWA's decision to amend the solicitation to reduce the responsibilities and water down the experience and qualifications required for the PM position is arbitrary and capricious and must be set aside.

Id. The Judge in Professional Service Industries, Inc. v. United States, therefore, reviewed the specific facts surrounding the agency's decision to change the requirements of the FHWA's solicitation after the GAO protests and found the agency lacked a rational basis for making the changes made in response to the final GAO decision and determined that the agency's irrational changes all pointed to assisting the awardee at the expense of protestor Professional Service Industries, Inc., which resulted in the conclusion that the agency did, in fact, conform the solicitation to the awardee's proposal.

In the future, when considering the New Solicitation issued by the VA, the court is mindful of the Professional Service Industries, Inc. v. United States decision and if the record in the new pre-award bid protest reflects that the agency intentionally tried to draft the New Solicitation to prevent Patriot First from being capable to compete for, or be awarded, the new contract, or if the changes to the New Solicitation from the original Solicitation were made at the expense of Patriot First's capabilities. The court also will consider if the changes in the New Solicitation appear to be designed to make an award to a specific possible offeror.

Moreover, the court will look to the language of Amendment 0006 in the New Solicitation to see if it is consistent with the court's earlier conclusions regarding Amendment 0006 in the now cancelled Solicitation. As the court determined in its previous Opinion:

> In sum, the agency did not sufficiently explain or document the original decision to include Amendment 0006 in the Solicitation, nor has the agency sufficiently documented or substantiated a new decision after the remand to retain the unchanged Amendment 0006. The agency's justification for adding Amendment 0006 was insufficient, as discussed in this court's earlier remand Order, and the agency's August 5, 2024 Memorandum for Record does not offer anything more than generalized, conclusory, unsupported concerns that the original Solicitation "could potentially impede

competition" or was "more restrictive than necessary," which were only vague assertions. The language in the August 5, 2024 Memorandum for Record suggests to the court that the agency is wedded to its pre-remand posture and has made little to no effort to explain the original decision to add Amendment 0006 to the Solicitation or to explain or document the decision to retain Amendment 0006, unchanged after the remand. The August 5, 2024 Memorandum for Record fails to validate or explain its decision to amend the identified provisions in the Solicitation to the benefit of necessary veterans services. Taken together, the agency's failure to explain or justify the inclusion of Amendment 0006, or explain or justify why the agency retained the unchanged Amendment 0006 after the remand demonstrates that the agency lacked a rational basis for the decision to include Amendment 0006 in the Solicitation or to retain Amendment 0006 unchanged. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332; see also Mitchco Int'l, Inc. v. United States, 26 F.4th at 1377; Harmonia Holdings Grp., LLC v. United States, 999 F.3d at 1403. The arbitrary and capricious decision to continue to rely on Amendment 0006 unchanged in the evaluation process for the Solicitation demonstrates an error by the VA in the procurement process. Moreover, protestor was prejudiced by the agency's decision to continue to include the requirements of the unchanged Amendment 0006 and protestor has suffered a "'non-trivial competitive injury which can be redressed by judicial relief.'" See Orion Tech., Inc. v. United States, 704 F.3d at 1348 (quoting Weeks Marine, Inc. v. United States, 575 F.3d at 1362–63); see also SEKRI, Inc. v. United States, 34 F.4th at 1071.

If the agency continues to rely on the language of Amendment 0006 in the New Solicitation without further explanation or justification, it could suggest to the court that the agency's procurement actions regarding the place of performance, the number of beds and the segregated sleeping requirements could be arbitrary and capricious, could undermine the justifications for the cancellation of the Solicitation, and could raise questions as to an arbitrary and capricious intent by the VA to move forward with a substantially similar procurement.

## CONCLUSION

For the reasons described above, regarding the agency's cancellation of the Solicitation, the protestor's motion for judgment on the Administrative Record is **DENIED**. Protestor's motion to supplement the Administrative Record is **DENIED.** Defendant's cross-motion for judgment on the Administrative Record is **GRANTED**. The Clerk's Office shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**